## Case No. 8,519.

### LOTHROP et al. v. STEDMAN et al.

[13 Blatchf. 134; 15 Am. Law Reg. (U. S.)
346; 4 Ins. Law J. 829; 12 Alb. Law
J. 354; 22 Int. Rev. Rec. 33.] [1]

Circuit Court, D. Connecticut. Oct. 1, 1875.

INSURANCE COMPANY—REPEAL OF CHARTER—PRO-
CEEDINGS IN INSOLVENCY — INSURANCE COMMIS-
SIONER—SUIT BY STOCKHOLDER ALLEGING SOLV-
ENCY—INJUNCTION—CUSTODY OF ASSETS.

1. The legislature of Connecticut, in 1866, char-
tered a life insurance corporation, reserving, in
the charter, a right to alter, amend or repeal it
"at the pleasure of the general assembly." A
statute of the state, passed in 1871, created the
office of insurance commissioner, and provided,
that, if it should appear to him that the as-
sets of any life insurance company were less
than its liabilities, he might petition the prop-
er court of probate to appoint a trustee to take
possession of its property for the benefit of its
creditors, and made it his duty to so petition
if it should appear that its assets were less
in amount than three-fourths of its liabilities.
S., the insurance commissioner, petitioned the
probate court, setting forth that the assets of
said corporation were less than three-fourths
of its liabilities, and praying for the appoint-
ment of a trustee. After a full hearing on
the merits, the petition was dismissed. There-
after, the legislature, by a joint resolution passed
at its May session, in 1875, which contained sun-
dry recitals, resolved, that said charter should, on
the 1st of September, 1875, "be and become whol-
ly and absolutely repealed and annulled," provid-
ed, that, if the corporation should, before said
day, supply the deficiency existing in its assets,
and receive from S. a certificate of a specified
fact, the charter should remain in full force, and
should not, by such resolution, be repealed or an-
nulled, and provided that if S. and the corporation
should disagree as to the amount of assets, their
value and their sufficiency, two judges of the
state courts should determine the amount of such
assets, their value and sufficiency, and certify
the deficiency, if any, to be paid in, and, if the
corporation should, within thirty days after the
delivery of such certificate to the secretary of the
corporation, pay in such deficiency, such resolution
should become inoperative and void; that the de-
cision of the judges should be made, and the cer-
tificate be delivered to the secretary before No-
vember 1st, 1875; and that, in case the corpora-
tion and S. should disagree as to the value or
sufficiency of the assets, and the corporation
should not supply the deficiency on or before
September 1st, 1875. S. should, on that day, take
possession of all the assets, books and papers of
the corporation, and hold the same "subject to
the order of said chief judge, and to be disposed
of as provided by law." A statute passed by the
legislature at the same session provided, that the
title to the assets of life insurance companies, on
the repeal of their charters, should vest in the in-
surance commissioner, who should dispose of them
for the benefit of those interested in them, sub-
ject to the control of the proper state court. The
corporation did not, prior to September 1st, sup-
ply, to the satisfaction of S., the alleged deficien-
cy, and disagreed with him in regard to the
amount, value and sufficiency thereof. S. pre-
pared to take possession of the property of the
corporation, on September 1st, and prior to the in-
vestigation by the two judges. The corporation
thereupon obtained an injunction ex parte from a
state court, to enjoin S., which, after a hearing,
was, on motion of S., dissolved. S. also obtained
an ex parte injunction from a state court to re-

strain the officers of the corporation from dis-
posing of its assets. The plaintiffs in this suit,
holders and owners of policies of insurance issued
by the corporation, filed this bill against S. and
the corporation, alleging its solvency, and ask-
ing an injunction against S. from taking posses-
sion of its assets, and applied for a provisional
injunction to that effect: Held, that such in-
junction must be refused.

2. It should be a very clear case to justify a
court in deciding that an act of the legislature is
invalid, on a motion for a provisional injunction.

3. The principle, that a stockholder of a cor-
poration cannot maintain a bill in equity against
a wrong-doer, to prevent an injury to the cor-
poration, unless it shall be averred, and shall af-
firmatively appear, that the corporation has re-
fused to take measures to protect itself, does not
extend to a bill which is in good faith filed by a
creditor; and the plaintiffs are only creditors of
the corporation.

4. When a charter or a general statute pro-
vides that such charter is subject to repeal by
the legislature, at its pleasure, without restric-
tions or conditions limiting the power of repeal,
the legislature has the right to exercise its powers
summarily and at will, and its action, being a
legislative and not a judicial act, cannot be re-
viewed by courts, unless it should exercise its
power so wantonly and causelessly as palpably to
violate the principles of natural justice, and, in
such a case, a repeal, like other legislative acts
which do thus violate the principles of natural
justice, may be reviewed by courts.

5. The decision of the court of probate did not
debar the legislature from taking such legislative
action as it deemed just.

6. A repeal of a charter does not of itself vio-
late or impair the obligations of any contract
which the corporation has entered into.

7. The legislature has the right, as an admin-
istrative measure, to appoint a trustee, to take
the assets and manage the affairs of a corporation
whose charter has been repealed, in conformity
with the general, just rules which it has pre-
scribed, or with the rules of a court of equity, if
no statutory provisions have been enacted.

8. The resolution of repeal, in this case, was a
legislative act, declaring the repeal and not the
forfeiture of the charter, and the recitals in it
were not in the nature of judicial findings of fact,
but the statement of the reasons which operated
upon the legislative mind.

9. By the resolution, in this case, the charter
was repealed, but the repeal was not to take
effect, or be operative, if a specified event should
thereafter take place, which event was uncertain.
The designation of the two judges, to determine
whether the event had taken place, was not a del-
egation of the power to determine whether the
charter should or should not be repealed, but a
delegation of the duty of ascertaining whether a
fact existed, upon the existence of which the legis-
lature had determind that the repeal should not
go into effect.

10. Even if the charter were in existence and
unrepealed, the legislature had the power to take
away the custody of the corporation
from its directors, and entrust the custody to an
officer of the state, pending an investigation into
the company's solvency, and the determination
of the fact whether the event had happened on
which a repeal of the charter would take place.
Such power was derived from the reserved power
of amending the charter at pleasure.

11. The effect of the action of the legislature
was to make S. a trustee, under the exclusive di-
rection and control of a court of equity, and sub-
ject to its decrees.

[This was a bill in equity by William K.
Lothrop and others against John W. Stedman

---

[1] [Reported by Hon. Samuel Blatchford, Dis-
trict Judge, and here reprinted by permission.
12 Alb. Law J. 354, contains only a partial re-
port.]

and others. The suit was brought in a state court of Connecticut, and was removed on petition of plaintiffs to this court. Heard on motion for a provisional injunction.]

William D. Shipman and William W. McFarland, for plaintiffs.

Simeon E. Baldwin, for insurance commissioner.

SHIPMAN, District Judge. The American National Life and Trust Company was incorporated by the general assembly of the state of Connecticut in the year 1866, under the name of the American National Life Insurance Company. The eighth section of the charter is as follows: "This resolve may be altered, amended, or repealed, at the pleasure of the general assembly." A statute of the state, passed in 1871, relating in part to life insurance companies, and creating the office of insurance commissioner, provided, in substance, that. if it should appear to the commissioner, from any report, valuation, or examination of any life insurance company, that the assets of any such company incorporated by this state were less than its liabilities, the commissioner should, at his discretion, bring a petition to the proper court of probate, praying for the appointment of a trustee, to take possession of the property . of such company for the benefit of its creditors, and. if it should appear that the assets were less in amount than three-fourths of the liabilities of such company, the act made it imperative upon the commissioner to bring such petition without delay.

On November 23d, 1874, Mr. John W. Stedman, then and now insurance commissioner of this state, preferred his petition to the proper probate court, alleging that the result of an examination of the financial condition of the American National Life and Trust Company, and a valuation of its policies and assets, disclosed that the assets of the company were less than its liabilities, and less than three-fourths of its liabilities, and praying for the appointment of a trustee. After a full hearing, said court, having called to its assistance a judge of the superior court, in pursuance of a statute of the state, found "that the allegation that such assets are less than three-fourths of the liabilities is untrue, that the allegation that the assets of said company are less than its liabilities is true, and the court further finds that the deficiency is not such that the prayer of the petition should be granted," and dismissed the petition.

The insurance commissioner presented to the general assembly, at their May session, 1875, a special report upon the affairs of this company, and, at the same session, the legislature passed the following joint resolution: "Whereas the American Mutual Life Insurance Company of New Haven has transferred its assets to the American National Life and Trust Company of New Haven, and has ceased business, said last named company assuming the liabilities of said American Mutual Life Insurance Company; and whereas, it appears from the report of the insurance commissioner relating to the affairs of said American National Life and Trust Company, that the liabilities of said company exceed its assets more than four hundred thousand dollars; and whereas, said company has neglected and refused to render to the insurance commissioner a report of its condition and affairs, as required by law; therefore, resolved by this assembly, that the charter of said American Mutual Life Insurance Company and the charter of said American National Life and Trust Company shall, on the first day of. September, A. D. 1875, be, and become wholly and absolutely repealed and annulled; provided, however, that, if said American National Life and Trust Company shall, before said first day of September, 1875, supply the deficiency existing in its assets, and receive from the insurance commissioner a certificate showing that the assets of said company are sufficient to satisfy all outstanding and unpaid debts and claims, and to provide a full reinsurance reserve upon its policies in force, to be ascertained as now required by law, then the charters of said companies shall remain in full force, and shall not, by this resolution, be repealed or annulled; provided, further, if there shall be any disagreement between the insurance commissioner and said American National Life and Trust Company, as to the amount of assets, their value and their sufficiency, the chief justice of the supreme court of errors shall, upon the application of either the insurance commissioner or said company. designate one of the judges of the superior court to sit with him, and they shall fully hear the parties and determine the amount of such assets, their value and sufficiency, and their determination shall be conclusive, and they shall thereupon issue their certificate of the amount of the deficiency, if any, to be paid in; and, if said company shall. within thirty days after the delivery of said certificate to the secretary of said company, pay in the deficiency therein stated, this resolution shall become inoperative and void. The decision of said judges shall be made, and said certificate shall be delivered to said secretary, before November 1st, 1875. And provided further, that, in case of a disagreement between the said company and the insurance commissioner as to the value or sufficiency of its assets, and said company does not supply the deficiency in its assets on or before the first day of September, 1875, the insurance commissioner shall then and thereupon, on said first day of September, 1875, take possession of all the assets, books and papers of said company, and hold the same subject to the order of said chief judge, and to be disposed of as provided by law." At the same session, the legislature passed

a statute in regard to the disposition of the assets of life insurance companies upon the repeal of their charters, providing, in substance, that the title of the assets of any such corporation should vest absolutely, and in fee simple, in the insurance commissioner, who should hold and dispose of the same for the use and benefit of the creditors and policy holders of such company, and such other persons as may be interested in such assets, and divide the avails in a specified order, and be subject to the direction and control of the superior court for the county within which the corporation should be situate. The American National Life and Trust Company did not, prior to September 1st, 1875, supply, to the satisfaction of the commissioner, the alleged deficiency in its assets, and disagreed with that officer in regard to the amount, value and sufficiency thereof. He made preparations to take possession of the property of the company on September 1st, 1875, and prior to the investigation by the chief judge and his associate. The company thereupon brought a petition before the superior court for New Haven county, to enjoin the commissioner against his proposed action. A temporary ex parte injunction was granted, which· was dissolved by his honor, Judge Beardsley, on motion of the insurance commissioner, and after a hearing of the parties. A temporary and ex parte injunction has also been granted by Judge Robinson, of the court of common pleas, ·upon the petition of the insurance commissioner, to restrain the directors and executive officers of the company from disposing of its assets. Sundry citizens of the state of New York who hold and own policies of insurance which have been issued by said company, or which it is liable to pay by virtue of lawful contracts heretofore entered into, have brought their bill in equity before this court, against the commissioner and said corporation, alleging its solvency, praying that the commissioner be enjoined against taking possession of said assets. and that the company be enjoined against delivering such possession, mainly and principally upon the ground that the resolution of the general assembly which has been quoted, and which· is the foundation of the authority of the commissioner so to take possession, is void and of no effect. The reasons which are urged in support of this position will be stated hereafter. The complainants have also moved for the issuing of a provisional injunction to restrain the commissioner from taking possession of the assets of the company until the final hearing of the bill, and, upon this motion, counsel for the complainants and for the commissioner have been heard at length. The only question now to be decided is, whether a provisional injunction should be granted.

The general principles of law which are involved in this case are of great importance, and concern pecuniary interests in this coun-try of no ordinary magnitude, and would justify me in taking more time for the consideration of this motion than I am now able to give. It is proper that the hearing which will soon take place before Chief Justice Park and his associate, in regard to the value of the assets of the company, should not be embarrassed by the pendency of any undecided motions in this court, and it is due to the policy holders in the company, that they should be speedily apprised by the decisions of courts in regard to the management of its property. These considerations demand a prompt decision. and prevent anything more than a succinct statement of the principles which I deem applicable to the case.

It is obvious, at the outset, that the question which I am asked to determine has always been considered by courts one of grave importance. "The right of the judiciary to declare a statute void and to arrest its execution, is one which, in the opinion of all courts, is coupled with responsibilities so grave, that it is never to be exercised except in very clear cases; one department of the government is bound to presume that another has acted rightly. The party who wishes us to pronounce a law unconstitutional takes upon himself the burden of proving, beyond all doubt, that it is so." Erie & N. E. R. Co. v. Casey, 26 Pa. St. 287, per Black, J. It should be a very clear case to justify a court in deciding that an act of the legislature is invalid, upon a motion for a provisional injunction—a proceeding which addresses itself particularly to judicial discretion.

The defendant corporation is a stock corporation authorized to issue life policies upon the mutual plan of insurance, but it is not strictly a mutual insurance company, and the policy holders are not necessarily members of the corporation, and have no right to participate in its management. The complainants appear before the court only as creditors of the company. Being citizens of the state of New York, they have a right to bring this bill against the defendants, citizens of Connecticut, and their interest as creditors of the corporation, and cestuis que trust of the fund which is now in the control of the directors of the corporation, entitles them to maintain their suit, if they have suffered injury. The principle, that a stockholder of· a corporation cannot maintain a bill in equity against a wrong-doer, to prevent an injury to the corporation, unless it shall be averred, and shall affirmatively appear, that the corporation has refused to take measures to protect itself, does not extend to a bill which is in good faith filed by a creditor.

It is suggested, that the questions in this case are the same as those which are stated in the petition of the insurance company now pending in the superior court, and that they have already been virtually passed up-

on by the decision of Judge Beardsley. While the decision of any judge upon a motion for a temporary injunction is not a controlling authority, yet it is true, that the same general questions which are here presented were discussed in the argument before Judge Beardsley, and the fact that an eminent judge of this state had, in effect, refused the injunction when it was urged by the insurance company, should properly lead me to exercise caution before I granted it in an action which, though brought by the policy holders, the affidavits on file in this case tend to show was instituted at the instance of the company.

The counsel in the case are not seriously at issue as to the principles which are applicable to the repeal of charters by legislatures. A charter is a contract between the state and the corporators, and the corporation takes the grant subject to the limitations which are contained in the act of incorporation. If no power of repeal is reserved, none can be exercised; but, when the charter itself or a general statute provides that the charter is subject to repeal by the legislature, at its pleasure, without restrictions or conditions limiting the power of repeal, the legislature has the right to exercise its power summarily, and at will, and its action, being a legislative and not a judicial act, cannot be reviewed by courts, unless it should exercise its power so wantonly and causelessly as palpably to violate the principles of natural justice, and, in such case, a repeal, like other legislative acts which do thus palpably violate the principles of natural justice, may be reviewed by courts. The power of the legislature, therefore, is not unlimited, for the private rights of persons are not subject to an unjust and despotic exercise of power by a legislature, without means of redress. "The theory of our governments, state and national, is opposed to the deposit of unlimited power anywhere. The executive, the legislative and the judicial branches of these governments are all of limited and defined powers." Loan Association v. Topeka, 20 Wall. [87 U. S.] 663. It is always to be presumed that the legislature has exercised its great powers for adequate cause, and the extreme caution with which legislatures ordinarily act upon the subject of the repeal of charters fully warrants such a presumption.

It is to be observed, that this charter, like the majority of Connecticut charters, provides that it may be repealed "at the pleasure of the general assembly." It is unlike the charters in the Pennsylvania cases of Erie & N. E. R. Co. v. Casey, 26 Pa. St. 287, and Com. v. Pittsburg & C. R. Co., 58 Pa. St. 46. which provided, that, if the companies should abuse or misuse their franchises the charter should be subject to repeal. There is no question here, whether the legislature is or is not the final judge whether the contingency upon which the authority to repeal is based has occurred. The language of this charter is also unlike the charter which was examined in Allen v. McKean [Case No. 229], which provided that the legislature could alter, limit, restrain or annul the powers conferred, and in which case the court held that a right of absolute repeal was not reserved. The right of repeal is here expressly reserved, is to be exercised at the pleasure of the general assembly, and is subject only to the limitation which I have suggested.

It is not material whether the court of probate had or had not decided that it was not expedient to appoint a trustee. That court simply found that the company was insolvent, but that its assets were not less than three-fourths of its liabilities. The finding or the opinion of the court did not debar the legislature from taking such legislative action as it deemed just.

A repeal of a charter does not of itself violate or impair the obligations of any contract which the corporation has entered into. But the legislature cannot establish such rules in regard to the management and disposition of the assets of the corporation, that the avails shall be diverted from, or divided unfairly and unequally among, the creditors, and thus impair the obligation of contracts, or that the portion of the avails which belong to the stockholders shall be sequestered and diverted from the owners, and thus injure vested rights. "The capital and debts of banking and other moneyed corporations constitute a trust fund and pledge for the payment of creditors and stockholders, and a court of equity will lay hold of the fund and see that it be duly collected and applied. * *. * A law distributing the property of an insolvent trading or banking corporation among its stockholders, or giving it to strangers, or seizing it to the use of the state, would as clearly impair the obligation of its contracts, as a law giving to the heirs the effects of a deceased natural person, to the exclusion of his creditors. would impair the obligation of his contracts." Curran v. Arkansas, 15 How. [56 U. S.] 312. The legislature has also the right. as an administrative measure, to appoint a trustee, to take the assets and manage the affairs of a corporation whose charter has been repealed, in conformity with the general, just rules which it has prescribed, or with the rules of a court of equity, if no statutory provisions have been enacted. If no trustee is appointed by the legislature, "a court of equity which never allows a trust to fail for the want of a trustee, would see to the execution of that trust, although, by the dissolution of the corporation. the legal title to its property had been changed." Curran v. Arkansas, cited supra. The complainants do not controvert, in the main, the principles which have been stated, but they contend, that, while the legislature had the right to repeal this charter. it has not been in fact repealed; and, if it

has been repealed, that the provisions by which the commissioner was appointed to hold the assets subject to the order of the chief judge, who does not act as a judge, but merely as a committee, and whose directions are not subject to appeal or review, and the provision that the title to the assets shall be vested in the commissioner, are invalid, and that the resolution is void.

(1) It is contended that the preamble is void, because the legislature has no power to find facts which may affect private rights, and that the preamble is so interwoven with the resolution, that, being void, the resolution is void also. It is true, that the facts recited in a preamble of a private statute are not evidence, as between the person for whose benefit the act was passed and a third person, and that a legislature has no power to find facts by legislative enactment, so as to be evidence in suits against persons who were not applicants for the act. Elmondorff v. Carmichael, 3 Litt. (Ky.) 472; Parmelee v. Thompson, 7 Hill, 80. This is an obvious rule of evidence, but it has no application here. If, as is admitted, the legislature had the power to repeal the charter, it had the power to state the reasons which induced it to act. A statement of the reasons was not indispensable to the validity of the repeal, but was proper for the information of the public and of the corporation. This resolution is not a judicial act, finding that a forfeiture of the charter has taken place. If it was, it could well be urged, that a legislature has not ordinarily judicial powers, and that the attempt to exercise judicial functions is void; but, the resolution is a legislative act, declaring the repeal and not the forfeiture of the charter, and the recitals are not in the nature of judicial findings of facts, but the statement of the reasons which operated upon the legislative mind. "The inquiry into the affairs or defaults of a corporation, with a view to continue or discontinue it, is not a judicial act. No issue is formed. No decree or judgment is passed. No forfeiture is adjudged. No fine or punishment is imposed. But an inquiry is had in such form as is deemed most wise and expedient, with a view to ascertain facts upon which to exert legislative power, or to learn whether a contingency has happened upon which legislative action is required." Crease v. Babcock, 23 Pick. 344.

(2) The complainants insist, that the legislature must of itself determine whether an enactment shall or shall not be a law, and cannot delegate the power to make or repeal laws; and that the attempted repeal of this charter is delegated to the insurance commissioner, and is, therefore, void. The resolution provides, that the charter shall be repealed on September 1st, 1875, provided, if the company shall, before that day, receive a certificate that the deficiency in its assets has been supplied, then the charter shall remain in full force; and, in case of a disagreement between the commissioner and the company as to the amount of its assets, the chief justice and his associate shall determine and state the amount to be paid in, and, if the amount so found shall be paid within thirty days, the resolution shall be inoperative and void. I am inclined to the opinion, that, by this resolution, the charter was repealed, but the repeal was not to take effect, or be operative, if a specified event should thereafter take place, which event was uncertain. The commissioner, subject to an appeal to the chief justice and a judge of the superior court, was to determine whether that event had taken place. The legislature, for itself, determined and enacted that the charter should be repealed, provided an event did not occur in the future. The ascertainment and announcement that the event had happened, the legislature entrusted to an officer, or a committee, whom it designated. The legislature delegated to no one the power to determine whether the charter should or should not be repealed. It delegated the duty of ascertaining whether a fact existed, upon the existence of which it had determined that the repeal should not go into effect. "A valid statute may be passed to take effect upon the happening of some future event, certain or uncertain. It is a law in praesenti, to take effect in futuro. The event or change of circumstances must be such as, in the judgment of the legislature, affects the question of the expediency of the law. The legislature, in effect, declare the law inexpedient if the event should not happen, but expedient if it should happen. They appeal to nobody to judge of its expediency." Barto v. Himrod, 8 N. Y. 483, per Ruggles, C. J.

(3) The complainants further say, that the charter is not repealed until after the decision of Judge Park and his associate; that the legislature has no power, either before or after the repeal, to take the assets of an insurance company out of the hands of its officers, and to transfer the custody of the property to a third person, who is to hold them subject to the order of an individual acting not as a judge, and exercising no judicial functions, and not necessarily guided by the principles of law, and from whose order there is no appeal; and that the resolve is a special and personal statute, prescribing an exceptional and peculiar rule of conduct upon this single corporation, and, therefore, unjust, and in violation of legislative powers. The original resolution which was reported to the legislature contained the first proviso only. As reported, it manifestly provided that the charter should be repealed on September 1st, 1875, unless, upon the happening of a certain event, the repeal should not go into effect. An amendment was added, by which, in case of disagreement between the commissioner and the insurance company, another committee was appointed, to ascertain the amount of deficiency, if any, and,

if the amount so ascertained should be paid in, the resolution should be inoperative and void. It is a question which it is not now necessary to determine whether the charter is already repealed, or whether its repeal occurs at the expiration of the time which is limited for payment of the deficiency, if any there be, which may be found by the two judges, and upon non-payment of the amount. I have already suggested that the true construction is, that the charter is repealed, to take effect or not to take effect, upon the happening of an uncertain event. If the charter is repealed, there can be no doubt of the power of a legislature to appoint some person to act merely as custodian of the assets of the corporation. But, assuming that the charter is now in existence and unrepealed, I am of the opinion that the legislature has the power if in their opinion the public interests and the rights of the creditors of a particular corporation demand it, to take away the custody of the assets of such corporation from its directors, and entrust the custody to an officer of the state, pending an investigation into the company's solvency, and the determination of the fact whether the event has happened upon which a repeal of the charter will take place. It is apparent, from an inspection of the resolution, that the legislature deemed the corporation insolvent, and 'that the liabilities exceeded the assets $400,000, and also was of opinion that the corporation had not complied with the requirements of law, and that the affairs of the company were in so precarious a position that it was proper to take the unusual step of repealing the charter. But, the legislature was also willing to give the company an opportunity of making good the deficiency, and further was willing not to permit the decision of the insurance commissioner upon the question whether the deficiency had been supplied, to be final, but to entrust the final hearing and determination in regard to the sufficiency of assets to two persons whose judicial position peculiarly adapts them to pass upon disputed questions of fact, and whose official character precludes the suspicion that injustice might be done, and should assure the creditors that their rights are to be guarded. That investigation would necessarily consume time. The question presented itself—do the interests of the cestuis que trust in the property of the company require that, during the investigation, the assets, which, in our opinion, have become seriously impaired, shall remain in the hands of the directors? The legislature decided to place the assets, for the time being, in the custody of an officer of the state, and derived their power so to do from the general power which had been reserved over the affairs of this particular corporation—that of amendment of its charter at its pleasure. "Whatever might be true, if the charter was a close one, the general assembly could impose upon the defendants any additional condition or burden connected with the grant, which they might deem necesary for the protection or welfare of the public, and which they might originally and with justice have imposed." English v. New Haven & N. Co., 32 Conn. 243; Inland Fisheries Com'rs v. Holyoke Water-Power Co., 104 Mass. 446. It is not necessary that the resolution should be styled an amendment. Bishop v. Brainard, 28 Conn. 298. The legislature has reserved to itself the control of this charter, and can modify it to meet any exigency which may arise in the affairs of the corporation; and, when the legislature has determined that the pecuniary interests of the creditors are so imperilled that the necessity of repealing the charter may arise, it would seem that the legislature has the power to provide that the officer who has the oversight of all the insurance companies of the state is the proper person to have the exclusive custody of the assets of this corporation, and act as its treasurer for the time being. The legislature could originally have imposed this condition upon the company. They can impose it at any time when they deem it necessary for the protection or welfare of the corporation.

It is, also, earnestly contended, that the resolution directs the commissioner to hold the assets subject to the order of a committee not acting judicially, and from whose order there is no appeal, and who, by his direction, is not necessarily acting in conformity with principles of law. It is true that the chief justice will act as committee or agent of the legislature, and not strictly in his judicial capacity; and, if the resolution and the general statute in regard to life insurance corporations whose charters have been repealed, placed the assets under the control of a committee, to be disposed of as the committee pleased, and without the control of the courts of the state, such acts would properly be the subject of severe criticism, and might be declared to be inoperative. This resolution simply empowers the commissioner to hold the assets. He cannot sell or dispose of them under the resolution, but is merely their custodian. The chief justice has only authority to notify the commissioner either to return the assets to the company, or that the event has not taken place upon which the repeal of the charter is avoided, after which the commissioner is to be governed by the general statute. He then becomes a trustee under the exclusive direction and control of a court of equity, and subject to its decrees. The assets are not to be managed or disposed of, and the avails are not to be paid, in accordance with the order of a committee, but in pursuance of the general statute and under the direction of the superior court—a court of general jurisdiction and of full chancery powers. The weight of the complainants' argument bore upon this clause of the resolution, which they considered most unjust and prejudicial to their interests. I think that they misapprehend the nature of

the powers of the chief judge over the assets, which is so limited that there is no interference with the rights of creditors.

Upon the argument of the motion, the provisions of the general statute were criticised by the complainants. The bill does not ask for the interference of the court upon the ground of the invalidity of the statute, but the court is asked to prevent the commissioner from taking possession of the assets under the authority of a resolution of the general assembly which is alleged to be void. I do not deem it, therefore, incumbent upon me, at this time, to consider the character of the statute.

The suggestion which has been made in regard to the control of the legislature over those charters in which a power of amendment or repeal has been reserved, applies to the objection that this resolution is a special and peculiar law by which the rights of this corporation are to be jeopardized, differing from the law applicable to all other corporations in like condition. All insurance companies in Connecticut are created by special charter. Each company is under the particular supervision of the legislature, and is liable, in case of insolvency or malfeasance, to be controlled by such action applicable to the special case, as shall serve to protect creditors, or stockholders, or the public.

Sundry affidavits were read for the purpose of showing that Mr. Stedman had not informed the company, prior to September 1st, of the amount of the alleged deficiency, and had not given the company an opportunity to supply the required amount, and had not acted justly towards the company since the passage of this resolution. Counter affidavits were presented by the commissioner. If any steps were to be taken by the commissioner in advance of the action of the company, prior to September 1st—in regard to which I express no opinion—I am not satisfied that the commissioner failed to do whatever the resolution or the statutes, or the duty which he owed to the corporation or to the public, imposed upon him. The corporation does not seem to me to have suffered in consequence of a neglect of the commissioner to keep it informed of his views and wishes.

The motion for a provisional injunction is denied, and the restraining order now in force is vacated.