In re EMPIRE STATE SURETY CO. (No. 6508.)

(Supreme Court, Appellate Division, First Department. December 11, 1914.)

1. INSURANCE (§ 42*)—INSOLVENCY OF CORPORATION—"LIABILITIES."

"Liabilities," as used in Insurance Law (Consol. Laws, c. 28) § 63, as amended by Laws 1912, c. 217, providing that the rights and liabilities of the insolvent corporation, its creditors, policy holders, etc., shall, unless otherwise directed by the court, be fixed as of the date of the entry of the order directing the liquidation, cannot be held to mean debts, since the court could have no power to fix different dates of payment of debts, as that would be discrimination.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 50; Dec. Dig. § 42.*

For other definitions, see Words and Phrases, First and Second Series, Liability.]

2. INSURANCE (§ 51*)—INSOLVENCY OF CORPORATION—EMPLOYERS' LIABILITY INSURANCE—RIGHTS OF POLICY HOLDERS—"CONTINGENT CLAIM."

Under Insurance Law, § 63, providing that the rights and liabilities of policy holders shall, unless otherwise directed by the court, be fixed as of the date of the entry of the order directing the liquidation, the court, on an order of liquidation of a surety company insuring against accident to employés, may direct that claimants, who at the time of liquidation have been sued for injuries, have further time to perfect their claims as debts of the surety company, since such claims are not contingent, but only unliquidated.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 62, 63; Dec. Dig. § 51.*

For other definitions, see Words and Phrases, First and Second Series, Contingent Claim.]

3. INSURANCE (§ 51*)—EMPLOYERS' LIABILITY INSURANCE—SOLVENCY OF CORPORATION—RIGHTS OF POLICY HOLDERS—PENDING SUITS.

Where an employers' liability insurance company's policy provided that insured should not incur any costs, settle any case, etc., and that the company would defend all suits or settle them as they pleased, and that no action should lie against the company except for money actually paid by insured on a judgment against him, etc., the superintendent of insurance, after an order of liquidation against the surety company, which order, under Insurance Law, § 63, fixed the rights and liabilities of the corporation and its policy holders as of that date, could not reject claims of insured for the amounts paid in settlement of judgments already entered at the time of order, but not paid until afterwards, since on liquidation the surety repudiated its contract to defend the suits, etc., and hence could not set up the contract provisions to defeat the claims, on the ground that they were contingent.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 62, 63; Dec. Dig. § 51.*]

Appeal from Special Term, New York County.

Application by the People of the State of New York, by William T. Emmet, Superintendent of Insurance, for an order to take possession of the property and liquidate the business of the Empire State Surety Company. From an order denying motion of Superintendent for confirmation of report, he appeals. Affirmed.

See, also, 150 N. Y. Supp. 260.

Argued before INGRAHAM, P. J., and LAUGHLIN, SCOTT, DOWLING, and HOTCHKISS, JJ.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

M. J. Wright, of New York City, for appellant.

Edward Sandford, of New York City, for Utah Consolidated Mining Co.

W. H. Dodd, of New York City, for respondent Buffalo House-wrecking & Salvage Co.

Frank V. Johnson, of New York City, for respondent Putnam Coal & Ice Co.

John B. Coleman, of New York City, for respondent La Salle County Carbon Coal Co.

Thomas B. Hardin, of New York City, for respondent Chehalis River Lumber & Shingle Co.

A. W. Clement, of New York City, for respondent Wheeler.

Benjamin Reass, of Brooklyn, for respondent Thatcher.

HOTCHKISS, J. On December 16, 1912, in proceedings instituted under section 63 of the Insurance Law, the Empire State Surety Company was adjudged insolvent and the Superintendent of Insurance was directed to take possession of its property and liquidate its affairs. The surety company issued policies insuring against liability for damages from accidents suffered by employés of the assured and others. At least some of the policies also expressly insured against "the cost of defense in any suit" brought against the assured upon a claim for damages of the character insured against. In the form of policy appearing in extenso in the record, the provisions of which the uncontradicted statement of counsel for one of the respondents shows to have been common to all policies covering the claims involved on this appeal, it is provided that the company shall at its own cost defend, in behalf of the assured, any such suit, unless it shall elect to settle; also that the assured shall not, without the previous consent of the company, incur any expense, or settle any claim, nor interfere in any negotiation for settlement, or in any legal proceeding for the collection of the loss insured against. Each policy also, in substance, provided that no action should lie against the surety company unless brought by the assured to reimburse himself for moneys actually paid in settlement of a claim against the assured, either after final judgment in a suit brought against him, or after settlement of the claim asserted in behalf of the injured party before or after judgment thereon, but then only on the written approval of the Empire Company.

In the case of each of the claims in question, an accident had occurred prior to December 16, 1912, which was or might be covered by the policy, and a suit was pending against the assured on said date to recover the damages resulting in such accident. In the case of the respondents Chehalis River Lumber & Shingle Company, La Salle County Carbon Coal Company, Edwin H. Thatcher, and Putnam Coal & Ice Company, judgments had prior to December 16th been obtained against the assured, but an appeal had either been taken or was contemplated. In no other case had a judgment against the assured been obtained on December 16, 1912. In none of the cases had the assured, prior to December 16, 1912, actually satisfied his liability for the accident, although all assert, and produced evidence tending to show, that the

claims had been discharged by the assured by payment in full by or settlement subsequent to December 16th.

[1, 2] Many holders of policies similar to the above filed claims with the superintendent, who rejected them, including the eight claims represented by the respondents on this appeal. On motion to confirm the report, the learned justice at Special Term held that the claims were contingent, and that the surety company was not liable thereon on December 16, 1912, the date of the insolvency order; but by virtue of the discretion with which the court is invested under section 63 of the Insurance Law he extended until December 31, 1913, the time within which the claimants might prove the happening of events which would perfect their claims as debts of the Empire Company. If we were to follow the ruling below, and hold that the claims in suit were contingent, it would be difficult to sustain the order appealed from, for such a ruling would be tantamount to fixing different and discriminatory dates within which contingent and unprovable claims might be ripened and permitted to participate in the division of the fund, a result completely out of harmony with the established principles of justice governing the distribution of the assets of insolvents prevailing either in courts of equity or wherever jurisdiction over such distribution is exercised. It is doubtful whether the Legislature itself could establish a rule so offensive to the rights of others interested in the fund. People v. Metropolitan Surety Co., 205 N. Y. 135, 145, 98 N. E. 412, Ann. Cas. 1913D, 1180; Lothrop v. Stedman, 13 Blatchf. 134, 42 Conn. 583, Fed. Cas. No. 8,519. In the case of Commercial Alliance Life Ins. Co., 154 N. Y. 95, 47 N. E. 968, it was held that the claims of policy holders of a life insurance company should be determined as of the date of the commencement of the insolvency proceedings against the company, and, overruling a number of previous cases, decided that, where the death occurred subsequent to that date, claimants could not prove for a death loss, but for the surrender value of the policy only. This was but an application of the general and equitable rule that "quality is equity," and brought the law in this state into harmony with that of other jurisdictions.  •

Having regard for the nature of the contract of life or fire insurance, there can be no doubt of the correctness of the decision. But I do not think that the equitable rule is so indiscriminating as to fail to distinguish between claims which are wholly contingent, having in fact no basis on which to rest at the time when jurisdiction is assumed over the fund, and claims which are merely unliquidated, or where the determinative circumstance has in fact occurred, and what remains to be done relates merely to its judicial ascertainment, or to the ascertainment of the resultant damages. In this respect, however, it will be noticed that the losses involved in the four claims hereinbefore specifically named had been reduced to judgment before the liquidation order was entered. Subdivision 3 of section 63 of the Insurance Law, as amended by Laws 1912, c. 217, passed some years after the decision in the Commercial Alliance Life Insurance Co. Case, provides:

"The rights and liabilities of any such corporation, and of its creditors, policy holders, stockholders and members, and of all other persons interested

in its assets, shall, *unless otherwise directed by the court*, be fixed as of the date of the entry of the order directing the liquidation of such corporation. * * * "

In my opinion these words are no more than a codification of the rule of procedure in equity, precedents for which must be within the memory of every practitioner of experience. The words "rights and liabilities" are very broad, and as used in the statute I cannot construe the word "liabilities" to mean "debts," a meaning which has sometimes been given to it where the situation so required. To give it that interpretation here would force us to hold that the words "unless the court otherwise direct" were practically meaningless, because the court could not, at least as I have shown, without violating a basic principle of right, fix different dates for the recognition of different debts, or different classes of debts, as claims upon the fund. In the case of each of the claims before us the loss insured against had happened. This was exactly what had not occurred in the Commercial Life Insurance Co. Case. To assure itself of greater protection, the surety company, in the policies on which the present claims are founded, provided that "no action should lie" against it, unless to reimburse the assured for the actual payment of a judgment obtained against him, or in satisfaction of a compromise or settlement of the loss before or after judgment, and with the company's consent. Many cases may be found where this or a similar provision has been successfully invoked by the insurer in actions on the policy, and doubtless in opinions in such cases phrases can be found to the effect that until the happening of the stipulated event the insurer is under no liability to the assured. But such decisions are not, I think, controlling upon us in this matter. Between the incurring of the loss insured against and the right of the insured to sue the insurer therefor, there is a substantial distinction, one which lies at the very root of the question before us. It needs but little imagination to infer that the situation and equities of these claimants are of a class which was clearly in the mind of the Legislature when section 63 was adopted, and that by that section it was its intention to confirm the court's original equitable jurisdiction commonly exercised in similar cases, or at least to confer upon the court discretion to grant such claimants an opportunity to ripen their claims into debts, before they should be excluded from participation in the assets of the company.

I do not regard the cases of People v. Met. Surety Co., 205 N. Y. 135, 98 N. E. 412, Ann. Cas. 1913D, 1180, or Id., 211 N. Y. 107, 105 N. E. 99, as determinative of the present. In the former, the company gave bond to pay a judgment, if obtained, and none had been obtained at the time of the insolvency; in the latter, the company gave bond under a statute where recovery of a judgment in an action prescribed by and conducted in accordance with the provisions of the statute was the condition on which liability under the bond attached. The principle of these cases, as I read them, is totally different from that on which rests the admission of the claims in question to rank as "liabilities," and in neither case was section 63 of the Insurance Law, referred to or considered.

[3] There is another ground, however, on which I think we may confidently place our decision that the several claims in question were not contingent. When the liquidation order was entered, the surety company became civiliter mortuus and its business came to an end. Carr v. Hamilton, 129 U. S. 252, 9 Sup. Ct. 295, 32 L. Ed. 669; People v. Metropolitan Surety Co., supra, 205 N. Y. 141, 98 N. E. 412, Ann. Cas. 1913D, 1180. From that moment it became impossible for it to perform its obligation to defend at its own cost any action brought against the assured for the recovery of damages on account of an accident or other loss covered by the policy. It would be astonishing if in this situation it should be held that the company, or those representing its interests, could be permitted to insist that the assured should at its own risk and cost, and as a condition of being permitted to share in the assets of the insolvent company, proceed to do the things that the company had bound itself to do, or, having thus become incapacitated to do anything itself, that the company should be permitted, as conditions precedent to the right of the assured to any claim for loss under the policy, to urge the performance by him of provisions which prevented the assured from assuming either to defend himself or to incur any expense in that regard or to settle any claim arising on account of the loss. The law is not so unreasonable as to require such a holding. The clauses of the policy which gave to the company the right to insist that a judgment for the loss be first obtained against the assured, and which prevented the assured from settling the claims without the company's consent, and which bound the company to assume at its own cost the defense of actions brought against the assured, were substantial conditions of its contract, and when it became impossible for the company to perform these obligations, such clauses of the contract were no longer available. St. Louis Beef Co. v. Casualty Co., 201 U. S. 173, 26 Sup. Ct. 400, 50 L. Ed. 712; Brassil v. Maryland Casualty Co., 210 N. Y. 235, 104 N. E. 622; Glens Falls Port. Cement Co. v. Travelers' Ins. Co., 162 N. Y. 399, 56 N. E. 897.

The orders should be affirmed, with $10 costs and disbursements. All concur.