*In re* ANCILLARY RECEIVERSHIP OF IDEAL MUTUAL INSURANCE COMPANY (Midwest Steel Erection Company, Inc., Petitioner-Appellant, v. The Illinois Insurance Guaranty Fund, Respondent-Appellee).

First District (3rd Division) No. 1—90—1352

Opinion filed September 4, 1991.

O'Halloran, Kosoff & Miller, of Northbrook, for appellant.

Lord, Bissell & Brook, of Chicago, for appellee.

PRESIDING JUSTICE CERDA delivered the opinion of the court:

This appeal is from the trial court's order denying Midwest Steel Erection Company's (Midwest's) summary judgment motion on all three counts of its first amended petition for declaratory relief, and granting Illinois Insurance Guaranty Fund's (the Guaranty Fund's) cross-motion for summary judgment on that petition. On appeal, Mid-

west asserts that the trial court erred in its summary judgment orders since the Guaranty Fund has a duty, pursuant to the Illinois Insurance Guaranty Fund Act (Ill. Rev. Stat. 1985, ch. 73, par. 1065.82 *et seq.*) (the Act), to defend and indemnify Midwest with respect to three personal injury cases currently pending against Midwest. The Guaranty Fund asserts that the personal injury cases against Midwest did not constitute covered claims under the Act because Midwest failed to give notice of these claims prior to the last date for timely filed proofs of claim as required by the Act.

Midwest, an Illinois corporation, purchased a comprehensive general liability insurance policy from Ideal Mutual Insurance Company (Ideal), a New York domiciled insurance company which held a certificate of authority to write insurance in Illinois. The Ideal policy was for the period of August 1, 1984, to August 1, 1985.

On February 7, 1985, the New York Supreme Court entered a liquidation order, with a finding of insolvency against Ideal. On that date, the court, as required by New York Insurance Law, section 7432(b) (N.Y. Ins. Law §7432(b) (McKinney 1985)), ordered that proofs of claim in the Ideal liquidation be filed no later than February 7, 1986. Under New York Insurance Law, section 7432(c) (N.Y. Ins. Law §7432(c) (McKinney 1985)), proofs of claim could be filed after February 7, 1986, but they would share in the distribution of the liquidation assets only after all timely claims were paid.

On April 22, 1985, the New York Superintendent of Insurance, as Ideal's liquidator, sent Midwest a proof of claim form, which contained three boxes that could be checked by a party making a claim in the Ideal liquidation: "(1) Claim is made for policyholder protection up to the limits of the policy; (2) Claim is made for return of unearned premium; and (3) All other claimants give a concise statement below of the facts constituting the claim and the total amount claimed." The form also stated that the claim could be amended until the final date of adjudication. Midwest checked the boxes for policyholder protection and for return of unearned premium, and mailed it back to the New York Insurance Department by February 7, 1986.

Subsequently, Midwest was served with a complaint in a lawsuit by Daniel Henry, who alleged that he sustained personal injuries as a result of Midwest's negligence and violation of the Structural Work Act (Ill. Rev. Stat. 1987, ch. 48, par. 60 *et seq.*) (*Henry* litigation). On January 12, 1987, Midwest sent the complaint to the Guaranty Fund and requested Guaranty Fund protection for any liability arising out of that litigation. On March 23, 1987, the Guaranty Fund informed Midwest that it was not entitled to the Act's protection for the *Henry*

litigation because it had not filed a timely written claim with the Guaranty Fund regarding the *Henry* litigation.

Midwest was then served with a complaint in a lawsuit by Donald Olsen, Jr., who alleged that he sustained personal injuries as a result of Midwest's negligence and violation of the Structural Work Act (*Olsen* litigation). Because of the Guaranty Fund's response to the *Henry* litigation complaint, Midwest sent a letter to the New York Superintendent of Insurance on June 23, 1987, requesting that his office advise the Guaranty Fund that Midwest's timely filing of a proof of claim was sufficient to cover both the *Henry* and *Olsen* litigations. On July 7, 1987, the Guaranty Fund sent Midwest a letter stating that Midwest was not entitled to the Act's protection with respect to the *Henry* and *Olsen* litigations because Midwest had not given timely notice of those claims prior to February 7, 1986.

On April 18, 1988, a third-party complaint was filed by Daniel International, Inc., naming Midwest and others as third-party defendants in a lawsuit by John Shervino (*Shervino* litigation). Daniel International, Inc., alleged that it was entitled to contribution from Midwest for any judgment entered against it for the personal injuries Shervino allegedly suffered as a result of Daniel International, Inc.'s negligence. Midwest did not directly tender the third-party complaint to the Guaranty Fund, but instead amended its petition in pending legal proceedings to include the complaint.

On August 15, 1988, Midwest requested permission from the New York Insurance Department to amend its proof of claim to specifically include Midwest's liability, if any, with respect to the *Henry*, *Olsen*, and *Shervino* litigations. On September 6, 1988, the New York Insurance Department sent Midwest a letter stating that Midwest's proof of claim had been amended as requested, although the face of the amended form does not specifically include the three claims. The Guaranty Fund still did not provide Midwest with any protection under the Act for the three litigations.

Also on August 15, 1988, Midwest was granted leave of the circuit court of Cook County to file a petition for declaratory relief against the Guaranty Fund, in the ancillary receivership proceeding concerning the Ideal liquidation. Subsequently, on December 21, 1988, Midwest was granted leave of court to file its first amended petition for declaratory relief against the Guaranty Fund. Count I of the first amended petition sought a declaration that Midwest's liability, if any, in the *Henry* and *Olsen* litigations was a covered claim as defined in the Act, and that the Guaranty Fund was under a duty to defend and indemnify Midwest for both of those cases. Count II sought a similar

declaration for the *Shervino* litigation. Count III, in the alternative to counts I and II, sought a declaration that Midwest's amendment to its proof of claim related back to the date of its original proof of claim with the New York Insurance Department. In its answer, the Guaranty Fund admitted all the factual allegations, but denied that Midwest's proof of claim was timely filed and that Midwest's liability, if any, in the *Henry, Olsen,* and *Shervino* litigations constituted covered claims as defined in the Act.

On December 4, 1989, Midwest filed a summary judgment motion against the Guaranty Fund on all counts of its first amended petition. Then, on January 3, 1990, the Guaranty Fund filed a cross-motion for summary judgment on all counts of that petition. Both parties filed memoranda, and on April 30, 1990, there was a trial court hearing. The Guaranty Fund argued that this case was indistinguishable from *Union Gesellschaft Fur Metal Industrie Co. v. Illinois Insurance Guaranty Fund* (1989), 190 Ill. App. 3d 696, a fifth district case, which held that unspecified contingent claims are not covered claims under the Act. Midwest argued that the holding in *Union Gesellschaft* was erroneous and distinguishable from this case. After considering arguments, the trial court denied Midwest's motion and granted the Guaranty Fund's motion for summary judgment. The trial court found that the *Union Gesellschaft* case controlled.

On appeal Midwest asserts that (1) the purpose of the Act is to place insureds in the same position they would have been in but for their liability carrier's insolvency; (2) the liquidation provisions of the Insurance Code (Ill. Rev. Stat. 1987, ch. 73, par. 1065.82 *et seq.*) are *in pari materia* with the Act; (3) the Act does not exclude contingent claims from its definition of covered claims; and (4) the liquidation provisions of the Insurance Code expressly authorize insureds of an insolvent liability carrier to file contingent claims. Therefore, Midwest argues, the only reasonable construction of sections 534.3 and 540.5 of the Act (Ill. Rev. Stat. 1985, ch. 73, pars. 1065.84–3(a), 1065.90–5) is that covered claims include contingent claims, such as claims for policyholder protection, filed with the liquidator of the insolvent carrier's estate prior to the claim bar date.

■ We first consider the Act's function and purpose. To ascertain and give effect to the legislature's intent, the entire statute must be examined and the legislative purposes considered. (*In re Liquidation of Security Casualty Co.* (1989), 127 Ill. 2d 434, 442.) The purpose of the Act is

> "to provide a mechanism for the payment of covered claims under certain insurance policies, to avoid excessive delay in

payment, to avoid financial loss to claimants or policyholders because of the entry of an Order of Liquidation against an insolvent company, and to provide a Fund to assess the cost of such protection among member companies." Ill. Rev. Stat. 1987, ch. 73, par. 1065.82.

■ Every insurance company authorized to write liability insurance in Illinois must be a member of the Guaranty Fund. (Ill. Rev. Stat. 1985, ch. 73, pars. 1065.84–5, 1065.85.) When a member of the Guaranty Fund is declared insolvent, the Guaranty Fund is deemed the insolvent company to the extent of its obligation for covered claims. (Ill. Rev. Stat. 1985, ch. 73, par. 1065.87–4.) As the insured's assignee, the Guaranty Fund has the right to seek reimbursement for its costs and expenses for covered claims from the insolvent member's liquidation estate. (Ill. Rev. Stat. 1985, ch. 73, par. 1065.95(b).) The Fund, however, has no statutory obligation to satisfy all judgments entered against an insured of an insolvent insurance company. *Nianick v. Edgewater Beach Hotel* (1975), 28 Ill. App. 3d 33, 34.

■ In interpreting the various sections of the Insurance Code, we have read them together and construed them harmoniously where possible. (*Rawles v. Hartman* (1988), 172 Ill. App. 3d 931, 935; *Doran v. Department of Labor* (1983), 116 Ill. App. 3d 471, 475.) A basic rule of statutory construction is "that two statutes on the same subject matter and parts of a comprehensive statutory scheme should be read *in pari materia* in order to" ascertain the legislature's intent and to avoid injustice. *Rawles,* 172 Ill. App. 3d at 935; *Doran,* 116 Ill. App. 3d at 475.

■ Midwest asserts that its claim is a covered claim pursuant to the Illinois Guaranty Fund Act (Ill. Rev. Stat. 1985, ch. 73, par. 1065.82 *et seq.*) because the Act's definitions of covered claims do not exclude contingent claims. The Act defines a covered claim in two different sections. Section 534.3(a) of the Act defines a covered claim as:

> "an unpaid claim for a loss arising out of and within the coverage of an insurance policy to which this Article applies and which is in force at the time of the occurrence giving rise to the unpaid claim *** if:
> ***
> [t]he claimant or insured is a resident of this State at the time of the insured occurrence ***." Ill. Rev. Stat. 1985, ch. 73, par. 1065.84–3(a)(ii).

Midwest satisfies this section's requirements. Any liability arising from the *Henry, Olsen,* and *Shervino* litigations is a loss arising out of and within the coverage of the comprehensive general liability pol-

icy issued to Midwest by Ideal. Furthermore, the policy was in force at the time of each occurrence alleged in the *Henry, Olsen,* and *Shervino* pleadings.

Section 540.5 of the Act, however, more specifically defines a covered claim as:

"a claim which appears on the books and records of the insolvent company as of the date of the Order of Liquidation or a claim for which notice is given in writing to the liquidator of the insolvent company's domiciliary state or to an ancillary receiver in this State, if any, or to the Fund or its agents *prior to the earlier of the last date fixed for the timely filing of proofs of claim in the domiciliary liquidation proceedings or 18 months after the entry of the order of liquidation.*" (Emphasis added.) Ill. Rev. Stat. 1987, ch. 73, par. 1065.90—5(a).

The three litigations do not satisfy this section's requirements. Although Midwest completed the proof of claim form sent by the New York Superintendent of Insurance and returned it by February 7, 1986, the last date fixed for the filing of proofs of claim in the Ideal liquidation, notice of the *Henry, Olsen,* and *Shervino* litigations was not given to the Guaranty Fund or to any domiciliary or ancillary liquidator by February 7, 1986. Therefore, none of these claims are covered claims under the Act.

■ We reject Midwest's argument that its original proof of claim satisfied the requirements of section 209 of the Insurance Code for the *Henry, Olsen,* and *Shervino* litigations. Section 209 of the Insurance Code sets out the requirements of a proof of claim:

"A proof of claim shall consist of a statement under oath, in writing, signed by the claimant, setting forth the claim, the consideration therefor, and whether any, and if so, what securities are held therefor, and whether any, and if so, what payments have been made thereon, and that the sum claimed is justly owing from the company to the claimant." Ill. Rev. Stat. 1985, ch. 73, par. 821(1).

Since Midwest's original proof of claim did not identify any particular claim, it did not satisfy the above requirements.

Midwest then asserts that section 209 of the Insurance Code expressly recognizes an insured's right to file a contingent claim. *In re Munsie* (1929), 32 F.2d 304, 305, *rev'd on other grounds* (1929), 33 F.2d 79, a bankruptcy case, defines a contingent claim as one that

"remains uncertain, at the time of the filing of the petition in bankruptcy, whether or not the bankrupt will ever become liable to pay it. If it is certain that he is liable to pay it, although

it may be uncertain how much he will have to pay, the claim is unliquidated, but it is not contingent."

*In re Empire State Surety Co.* (1914), 165 A.D. 135, 138, 150 N.Y.S. 567, 569, discusses the difference between contingent claims and unliquidated claims. Contingent claims are those "having in fact no basis on which to rest at the time when jurisdiction is assumed over the fund," and unliquidated claims are those "where the determinative circumstance has in fact occurred, and what remains to be done relates merely to its judicial ascertainment, or to the ascertainment of the resultant damages." *In re Empire State*, 165 A.D. at 139, 150 N.Y.S. at 569.

■ The *Henry, Olsen,* and *Shervino* claims are contingent claims. None of them has yet gone to judgment and Midwest has no liability regarding these claims. While it is true that an insured has a right to file a contingent claim under the Insurance Code, Midwest misinterprets section 209 as recognizing an insured's right to amend its proof of claim up to three years after the last date fixed for the filing of claims in the liquidation proceedings. Midwest erroneously contends that section 209 provides that if "an insured identifies specific losses for which it made a timely claim for policyholder protection between the last date fixed for filing claims and the date established for the liquidation of contingent claims, the Guaranty Fund must accept those losses and provide the insured with the protection of the Guaranty Fund Act."

Section 209, the only section that provides for contingent claims, states:

"Where a Liquidation, Rehabilitation or Conservation Order has been entered in a proceeding against an insurer under this Code, any insured under a liability insurance policy shall have the right to file a contingent claim. The Court at the time of the entry of the Order of Liquidation, Rehabilitation or Conservation *shall fix the final date for the liquidation of insured's contingent claims, but in no event shall said date be more than three years after the last day fixed for the filing of claims,* provided, such date may be extended by the Court on petition of the Director should the Director determine that such extension will not delay distribution of assets under Section 210. *No contingent claim shall be allowed unless such claim is liquidated and the insured claimant presents evidence of payment of such claim to the Director on or before the last day fixed by the Court.*

The obligation of the insurer, if any, to defend or continue the defense of any claim or suit under a liability insurance policy shall terminate on the entry of the Order of Liquidation, Rehabilitation or Conservation." (Emphasis added.) Ill. Rev. Stat. 1985, ch. 73, par. 821(3).

In addition, New York Insurance Law section 7433(c) similarly states:

"No contingent claim shall share in a distribution of assets of an insurer adjudicated to be insolvent by an order made pursuant to section seven thousand four hundred thirty-two of this article except that any such claim shall be considered if properly presented and may be allowed to share if:

(1) it becomes absolute against the insurer on or before the last day fixed for filing of proofs of claim, or

(2) there is a surplus and the liquidation is thereafter conducted upon the basis that such insurer is solvent." N.Y. Ins. Law §7433(c) (McKinney 1985).

Moreover, the Insurance Code specifically provides for late claims, whether contingent or not, but in a different manner than covered claims. Section 208 states:

"Proofs of claim on good cause shown may be filed subsequent to the date specified, but, no such claim shall share in the distribution of assets until all allowed claims proofs of which have been filed before said date, have been paid in full." Ill. Rev. Stat. 1985, ch. 73, par. 820(2).

Since the court did not set a final date for the liquidation of insured's contingent claims, any contingent claim not liquidated by February 6, 1989, which is three years from the filing deadline for claims, would not be allowed. Even if the three lawsuits had been contingent claims, none were liquidated by the deadline. Thus, none of the claims would have been allowed.

Midwest confuses the issues. While section 209 allows for the filing of contingent claims, it does not automatically make those claims covered claims. Covered claims are only claims that are timely filed. Section 209 does not negate the requirement for timely filed claims. Moreover, what Midwest calls an amendment is really a new and distinct claim. It is clear that contingent claims are allowed, but Midwest seems to ignore the liquidation requirement for those claims. Contrary to Midwest's assertion, section 209 distinguishes between contingent and liquidated claims by requiring liquidation before a contingent claim can be allowed.

■ Midwest next asserts that the liquidator's acceptance of its claim as a covered claim is binding on the Guaranty Fund. Midwest argues that it is the responsibility of the New York State Superintendent of Insurance, who was appointed by the New York Supreme Court as Ideal's liquidator, not the responsibility of the Guaranty Fund, to review, evaluate, and accept or reject claims filed in the Ideal liquidation. Thus, Midwest asserts, the Guaranty Fund cannot collaterally attack the judgment of the liquidator since acceptance of a proof of claim signifies recognition that a claimant will participate in the distribution of the insolvent carrier's assets. Furthermore, Midwest claims, the Guaranty Fund was not prejudiced because it would be reimbursed through its assignment.

Midwest relies on notations made on its amendment to establish that the liquidator considered Midwest's potential liability in the three litigation cases to be covered claims. The notations are as follows:

"Amendment from: 1.RR 4810 Insureds timely filing for same policy covering this claim. Approved by: (signature) 8/24/88.

TIMELY

Insured's Filing must pay losses through assignment (signature) 8/24/88."

There is no indication from the face of the amended form, however, that the three lawsuits were claimed since the nonspecified claims in the amendment appear to be identical to those in the original. The only differences are the notations, which are unclear.

Midwest then cites section 545 of the Act to prove that the Fund could not disregard the liquidator's determination:

"The Fund and any similar organization in another state shall be recognized as claimants in the liquidation of an insolvent company for any amounts paid by them on covered claims obligations as determined under this Article or similar laws in other states and shall receive dividends at the priority set forth in paragraph(c) of subsection (1) of Section 205 of this Code. *The liquidator of an insolvent company shall be bound by the amounts of covered claim payments by the Fund or a similar organization in another state on the receipt of certification of such payments.*" (Emphasis added.) Ill. Rev. Stat. 1987, ch. 73, par. 1065.95(b).

Contrary to Midwest's interpretation, section 545 does not provide that the Guaranty Fund is bound by an out-of-State liquidator's determination that a claim, such as Midwest's, was timely filed or that the claimant will participate in the liquidation of the insolvent

carrier's estate. Instead, it states that the liquidator is bound by the Guaranty Fund's covered claim payments.

Midwest then cites section 221.3 of the Insurance Code to support its position that the Fund is bound by the New York liquidator's decision. That section, however, entitled "Filing and proving of claims of non-residents against delinquent domiciliary insurers" (Ill. Rev. Stat. 1985, ch. 73, par. 833.3), is inapplicable because the insurance company is not an Illinois company and the claimant is not an out-of-State resident. Section 221.3 states:

> "*In any delinquency proceeding begun in this state against a domiciliary insurer of this state, claimants residing in a reciprocal ancillary state may file claims* either with the ancillary receiver, if any, or with the domiciliary receiver. All such claims must be filed on or before the last date fixed for the filing of claims in the domiciliary delinquency proceeding.
>
> In any such proceeding controverted claims belonging to claimants residing in ancillary states may either (a) be proved in this state as provided by law, or (b) if ancillary proceedings have been commenced in such ancillary state, may be proved in such ancillary proceedings. *In the event a claimant elects to prove his claim in ancillary proceedings*, and, if notice of the claim and opportunity to appear and be heard is afforded the domiciliary receiver of this state, *such claim, when allowed by the court in the ancillary state, shall be accepted in this state as final and conclusive* as to its amount, and shall also be accepted as final and conclusive as to its priority, if any, as against special deposits or other security located within the ancillary state." (Emphasis added.) Ill. Rev. Stat. 1985, ch. 73, par. 833.3.

The applicable section is section 221.4 of the Insurance Code, entitled "Proof of claims of residents in connection with delinquency proceedings in other states." It states:

> "*If a delinquency proceeding is commenced in a reciprocal state against an insurer domiciliary in such state, claimants against such insurer who reside within this state may file claims either with the ancillary receiver*, if any, appointed in this state *or with the domiciliary receiver*. All such claims must be filed on or before the last date fixed for the filing of claims in the domiciliary delinquency proceeding.
>
> In any such proceeding controverted claims belonging to claimants residing in this state may either (a) be proved in the domiciliary state as provided by law of such state, or (b) if an-

cillary proceedings have been commenced in this state, be proved in such ancillary proceedings. *In the event that any such claimant elects to prove his claim in this state, he shall file his claim with the ancillary receiver in the manner provided by the law of this state for the proving of claims against domiciliary insurers,* and he shall give, or cause to be given, notice to the receiver in the domiciliary state, either by mail or otherwise in writing that such claim is being made to such ancillary receiver and the nature and the amount thereof. The domiciliary receiver shall be entitled to appear or to be represented in any proceeding in this state involving the adjudication of the claim. *The allowance of the claim by the courts of this state shall be final and conclusive* both as to its amount and also as to its priority, if any, against special deposits or other security located within this state." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 73, par. 833.4.)

Pursuant to this section, the Illinois court's decision is binding on the New York liquidator since Midwest chose to prove its claim in Illinois.

The Guaranty Fund relies on *Jason v. Superintendent of Insurance* (1979), 67 A.D.2d 850, 851, 413 N.Y.S.2d 17, 18, which overturned a trial court decision that deemed an insured's late proof of claim as timely *nunc pro tunc* as of the prior filing deadline. As in this case, the insured in *Jason* did not become aware of a potential claim against him until after the filing deadline passed. Although the appellate court recognized that the insured could not have filed any information regarding the claim by the filing deadline, it ruled that the statute did not recognize ignorance of a claim to forgive a late filing. *Jason,* 67 A.D.2d at 851, 413 N.Y.S.2d at 18.

The Guaranty Fund argues that, if a court could not declare a late proof of claim as timely *nunc pro tunc,* then the liquidator surely could not. The Guaranty Fund emphasizes that section 540.5 of the Act (Ill. Rev. Stat. 1985, ch. 743, par. 1065.90—5(a)) constitutes the legal requirements for timely filing and cannot be changed by the liquidator's actions.

Furthermore, section 208 of the Insurance Code (Ill. Rev. Stat. 1985, ch. 73, par. 820) does not provide for an extension of the filing deadline for covered claims. Instead, it provides that proofs of claim for good cause filed late will not share in the distribution of assets until all timely filed proofs of claim have been paid in full. (Ill. Rev. Stat. 1985, ch. 73, par. 820(2).) Section 209 of the Insurance Code, which deals with the filing of contingent claims, provides only for an extension of time within which the contingent claim must be liqui-

dated before being allowed. (Ill. Rev. Stat. 1985, ch. 73, par. 821(3).) The Illinois statute controls the filing deadline and cannot be altered.

The Guaranty Fund also relies on *Satellite Bowl, Inc. v. Michigan Property & Casualty Guaranty Association* (1988), 165 Mich. App. 768, 419 N.W.2d 460, which did not allow a late claim. In that case, two actions accrued against a Michigan insured prior to the insolvency of an Ohio insurance company, but the insured was not notified of the actions until after the filing deadline had passed. When the insured notified the Michigan association of the claims, the association refused to defend them because they were not timely filed. The insured then successfully petitioned the Ohio court to allow the claims to be filed for good cause. The Ohio court ruled that the claims were entitled to participate in the liquidation's proceeds after the timely claims were satisfied. (*Satellite Bowl*, 165 Mich. App. at 770, 419 N.W.2d at 461.) The Michigan court overruled the Ohio court, stating that the Michigan statute, which is the same as the Illinois Act's section 540.5(a), provided that covered claims include only timely claims with priority among creditors, and not any claim accepted by the domiciliary State. *Satellite Bowl*, 165 Mich. App. at 772, 419 N.W.2d at 462.

The *Satellite Bowl* court stated that, while the purpose of the Act was to eliminate the risk for policyholders of doing business with an insolvent insurer, the deadline requirement indicated that the legislature did not intend to make this protection absolute, indemnifying any claim no matter when it arose. (165 Mich. App. at 772, 419 N.W.2d at 462.) The requirement, the court stated, evidenced a legislative intent to provide a cutoff date after which the association was no longer obligated to accept claims. (*Satellite Bowl*, 165 Mich. App. at 772, 419 N.W.2d at 462.) The Michigan statute, like the Illinois one, did not authorize extension of the filing deadline for covered claims for equitable reasons. Therefore, the court ruled, the courts do not have the power to create an exception to an express statutory scheme providing for claims against an insolvent insurer. (*Satellite Bowl*, 165 Mich. App. at 772, 419 N.W.2d at 462.) The court ruled that the claim must be timely, and not merely accepted by the domiciliary State, in order to be a covered claim. *Satellite Bowl*, 165 Mich. App. at 773, 419 N.W.2d at 462.

Midwest then argues that it had an absolute right to amend its proof of claim since the form Midwest submitted to the New York Superintendent of Insurance stated on its face that it could be amended up until the date of final adjudication in the Ideal liquidation, which has not yet occurred. Midwest misses the point. While the

original proof of claim can be amended, Midwest did not amend it. What Midwest asserts as an amendment is actually a new and distinct claim because the original claim did not mention the three litigations.

Midwest then makes the same argument in a different way, claiming that its amendment should relate back to the filing of its original proof of claim because it did not introduce a distinctly new and different claim from the original proof of claim. Midwest cites cases that involved amendments that did not introduce a distinctly new and different claim. The court in *In re Ebeling* (7th Cir. 1941), 123 F.2d 520, 521, ruled that the amendment was timely because both the original claim and the amendment identified the same court foreclosure case. The original timely claim was based on bonds secured by a trust deed while the amended claim alleged an ownership interest in those same bonds. *Ebeling*, 123 F.2d at 521.

The court in *Continental Motors Corp. v. Morris* (10th Cir. 1948), 169 F.2d 315, 317, ruled that the amount claimed for breach of contract could be amended to allege additional damages since the original claim was specific and identifiable. The court stated that "[a]fter the time for the filing of claims has passed only such amendments may be made as do not change or alter the ground for recovery set out in the original claim." *Continental Motors*, 169 F.2d at 317.

Midwest's amendment is different, however, because it introduced distinctly new and different claims. The original claim gave no mention of the three litigations. While Midwest did not know of the three claims before the filing deadline, this court cannot grant relief. That is for the legislature to do. Since courts do not have the power to legislate, they must interpret the law as enacted by the legislature. *Doran*, 116 Ill. App. 3d at 475.

■ Midwest then argues that requiring "a claim to be liquidated by an insured prior to submission of that claim to the Guaranty Fund would obviate the Guaranty Fund's duty to defend an insured of an insolvent carrier, as required by section 537.4 of the Act. (Ill. Rev. Stat. 1985, ch. 73, par. 1065.87–4.) That section, however, deals only with the Guaranty Fund's obligation to covered claims. The liquidation requirement of section 209 of the Insurance Code applies to contingent claims. Nothing in section 209 negates the timely filing requirement for contingent claims. Furthermore, the three claims were not liquidated before February 6, 1989.

Finally, *Union Gesellschaft* (190 Ill. App. 3d 696), a fifth district decision, is very similar to this case. Midwest contends that the *Union Gesellschaft* decision was erroneous, constituted judicial legislation, and was distinguishable from this case. The court in *Union Gesell-*

*schaft* affirmed a summary judgment in favor of the Guaranty Fund. Although we are not bound by the *Union Gesellschaft* decision, we agree with its holding.

In *Union Gesellschaft*, a manufacturer of bicycle pedals (the insured), which was insured under a product liability insurance policy with Ideal, filed a proof of claim with the New York Superintendent of Insurance prior to the February 7, 1986, deadline. Included in its proof of claim, the insured filed a contingent claim for every "known claim/suit made against [the insured] of which [it] has knowledge as of the [filing] date" and "each and every claim or suit after the [filing] date hereof, contingent or real, wherein a person was allegedly injured due to a defective product manufactured by [the insured]." *Union Gesellschaft*, 190 Ill. App. 3d at 698.

After the February 7, 1986, filing deadline, the insured received notice of two lawsuits which arose during the period that Ideal's insurance policy was in effect. After receiving notice of the two litigations, the Guaranty Fund denied any fund coverage because specific notice of the claims was not given to the liquidator prior to February 7, 1986. The insured filed a complaint for declaratory judgment, seeking a court order declaring coverage for the two claims as well as any other claims that might arise in the future as a result of injuries that occurred while insured by Ideal.

The Guaranty Fund filed a motion for summary judgment, asserting that a claim not timely filed is not a covered claim, and that even though a general proof of claim was timely filed by Union, it did not contain specific information concerning any claims. Summary judgment was granted in favor of the Guaranty Fund. The Fifth District Appellate Court stated that even though the Act's purpose is to eliminate the risk for policyholders doing business with an insolvent insurer, the "timely filing requirement of section 540.5 (Ill. Rev. Stat. 1987, ch. 73, par. 1065.90—5) indicates that the legislature did not intend to make this protection absolute, indemnifying all claims, including contingent claims." *Union Gesellschaft*, 190 Ill. App. 3d at 699.

The court further stated that the filing deadline would have no meaning if it ruled that the filing of a contingent claim was sufficient for purposes of being deemed a covered claim. (*Union Gesellschaft*, 190 Ill. App. 3d at 700.) The court then reasoned that such a ruling would mean that liquidation and distribution of the insolvent carrier's assets could not be effected until all potential statutes of limitation had run. (*Union Gesellschaft*, 190 Ill. App. 3d at 700.) The court found that the filing deadline evidenced a legislative intent to provide a cut-off date after which the Fund was no longer obligated to indemnify

claims. (*Union Gesellschaft*, 190 Ill. App. 3d at 700.) The court noted that the insured's ignorance of the two specific claims was not recognized by the statute to forgive a late filing of notice of the claims. While the court recognized the insured's plight, it stated, it could not remedy the situation since the court must determine and give effect to the legislature's intention. (*Union Gesellschaft*, 190 Ill. App. 3d at 700.) Therefore, the court concluded, the unspecified, contingent claim filed after the deadline did not constitute a valid proof of claim. *Union Gesellschaft*, 190 Ill. App. 3d at 700.

 Not only was the *Union Gesellschaft* case correctly decided, but any dissimilarities between that case and this case are minimal. The same result occurs in this case. There are three claims which arose after the proof of claims filing deadline even though the actions which were the basis of the three claims occurred while the insurance policy was in effect. No notice of the claims was given prior to the filing deadline. Furthermore, there is only a potential liability, making these claims contingent as well as unliquidated. They are not covered claims under the Act. Therefore, the summary judgment orders were proper.

Based on the foregoing, the judgment of the circuit court is affirmed.

Affirmed.

RIZZI and WHITE,* JJ., concur.