BEVERLY JOYCE BARBEE, Plaintiff-Appellant, v. ILLINOIS INSURANCE GUARANTY FUND, Defendant-Appellee.

Fifth District   No. 5—08—0390

Opinion filed September 24, 2009.

Steven F. Hanagan, of Hanagan & Dousman, of Mt. Vernon, for appellant.

J. Murray Pinkston III, of Stone & Johnson, Chtrd., of Chicago, for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

Beverly Joyce Barbee appeals from the trial court's July 10, 2008, declaratory judgment in favor of the Illinois Insurance Guaranty Fund. One issue was presented in this declaratory judgment. Barbee sought to have the court declare that the Illinois Insurance Guaranty Fund

(the Fund) was obligated to pay death benefits coverage to her deceased husband's dependents after the underlying insurance company had been declared insolvent and thereafter liquidated by a state government. The trial court dismissed the case pursuant to a motion filed by the Fund. The dismissal was on the basis that the decedent's disability claim and the survivor's death benefits claim were separate and independent claims and that the claim for death benefits was untimely and therefore not a "covered" claim. We affirm.

Barbee's husband sustained a devastating work injury in 1976. Through his employer, he was awarded permanent and total disability benefits under the Workmen's Compensation Act (Ill. Rev. Stat. 1973, ch. 48, par. 138.8(f) (now see 820 ILCS 305/8(f) (West 2008))). These benefits were awarded on May 30, 1980. The insurance company that issued Wilford Barbee's employer's policy was American Mutual Liability Insurance Company. Following the award, the company began the payment of his disability benefits.

Approximately 10 years later, the State of Massachusetts determined that American Mutual Liability Insurance Company was insolvent, and Massachusetts entered a liquidation order. After the insurance carrier became insolvent, the Fund accepted Wilford Barbee's permanent and total disability award as a "covered claim" under the Illinois Insurance Guaranty Fund statute—article XXXIV of the Illinois Insurance Code (Ill. Rev. Stat. 1983, ch. 73, par. 1065.82 *et seq.* (now see 215 ILCS 5/532 *et seq.* (West 2008))). Thereafter, the Fund assumed and continued the disability benefits payments to Wilford Barbee.

On January 26, 2007, Wilford Barbee died as a result of injuries he sustained in the original workers' compensation accident. His death occurred approximately 17 years after the insolvency of the insurer. Following his death, Mrs. Barbee asserted her own claim for death benefits with the Fund. The Fund denied that coverage existed. Barbee then filed an action for a declaratory judgment asking the court to declare that coverage for the death claim did, in fact, exist.

The Fund filed a motion to dismiss the claim pursuant to section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 2006)) on the basis that the death benefits claim was a new claim—separate and independent from the original disability benefits claim. The Fund contended that the survivor's claim was distinct in that there was a different claimant, a different date of loss, a different rate of calculation, and completely different benefits. The Fund also argued that the claim was "untimely"—beyond the time limitation for the presentation of a claim to the Fund. On July 10, 2008, the trial court agreed with this argument and granted the Fund's motion, thereby dismissing Barbee's claim.

Barbee appeals.

On appeal, Barbee asks us to determine whether the Fund remains liable for survivor's death benefits, because the Fund accepted the timely filed disability claim of the now-deceased employee after the insurer had become insolvent.

When a judgment pursuant to section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 2006)) is appealed to this court, we must review that judgment on a *de novo* basis. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 368, 799 N.E.2d 273, 278 (2003). In reviewing that judgment, we must construe all the pleadings and supporting documentation in the light most favorable to the nonmoving party. *Van Meter*, 207 Ill. 2d at 367-68, 799 N.E.2d at 278.

The Fund was created in order to maintain the status quo of a claimant, ensuring that payments would continue uninterrupted in the event that an insolvent company was liquidated. 215 ILCS 5/532 (West 2006).

However, coverage pursuant to the Fund was not automatic. Because of its statutory nature, we will examine several sections of the statute.

"The purpose of this Article is to provide a mechanism for the payment of *covered claims* \*\*\*." (Emphasis added.) 215 ILCS 5/532 (West 2006). The statute defines a "covered claim" as "an unpaid claim for a loss arising out of and within the coverage of an insurance policy to which this Article applies and which is in force at the time of the occurrence giving rise to the unpaid claim \*\*\* made by a person insured under such policy or by a person suffering injury or damage for which a person insured under such policy is legally liable \*\*\* if[ ] (i) The company issuing the policy becomes an insolvent company \*\*\* and (ii) The claimant or insured is a resident of this State at the time of the insured occurrence." 215 ILCS 5/534.3(a) (West 2006). The Fund is obligated to pay under several circumstances on all "covered claims," including those that are in existence before the order of liquidation is entered, as well as those that arise within 30 days after the liquidation order is entered or before the expiration of the insurance policy at issue, as long as the policy ended within 30 days after the date that the liquidation order had been entered. 215 ILCS 5/537.2 (West 2006). The Fund essentially steps into the shoes of the insolvent insurer by assuming the insurer's obligations, but only with regard to "covered claims." 215 ILCS 5/537.4 (West 2006).

The statute further indicates that a "covered claim" is a "claim which appears on the books and records of the insolvent company as of the date of the Order of Liquidation or a claim for which notice is given in writing to the liquidator of the insolvent company's domicili-

ary state or to an ancillary receiver in this State, if any, or to the Fund or its agents prior to the earlier of the last date fixed for the timely filing of proofs of claim in the domiciliary liquidation proceedings or 18 months after the entry of the order of liquidation." 215 ILCS 5/540.5(a) (West 2006).

## COVERED CLAIM

### Claim for Which Written Notice Is Given Within 18 Months of Liquidation Order

At the time that American Mutual Liability Insurance Company became insolvent, there was no doubt that Wilford Barbee's claim for workers' compensation disability benefits was a covered claim. And, in fact, the Fund continued to make those payments. No one contends that Wilford Barbee's death was not causally connected to the injuries he sustained in this work injury and that, ordinarily, upon the filing of a claim for death benefits, benefits would have been paid to his surviving family. A death benefits claim is a type of claim that is covered by the Fund when the underlying insurance company becomes subject to an underlying liquidation order. Here, however, the court found that Barbee's death benefits claim was not a "covered claim" as defined by the statute. Timely notice under the statute required that a claim be filed prior to September 9, 1990. Because Barbee's husband's death did not occur until 2007, she could not fulfill the statute's notice requirements for his death benefit claim. In so deciding, the court rejected Barbee's argument that notice of the disability claim was adequate regarding the death benefit claim, holding instead that the right of recovery for her husband's death was separate and independent from his disability benefits claim and thus would have required a separate notice.

The Fund contends that a separate notification is required because the claimants are different and that there are different rate calculations, different dates of loss, different benefits, and different benefits periods.

The Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 2006)) supports this argument because it also distinguishes disability claims from death benefit claims. Under the Workers' Compensation Act, the Barbee death claim did not arise until his death in 2007. The Workers' Compensation Act has a three-year statute of limitations relative to death claims, and so Barbee would have had until the third anniversary of his death in 2010 to file her claim for death benefits. 820 ILCS 305/7 (West 2006).

The Fund argues that it does not cover all claims, but only "covered claims." See *Claudy v. Commonwealth Edison Co.*, 255 Ill.

App. 3d 714, 732, 626 N.E.2d 1088, 1100 (1993), *rev'd on other grounds*, 169 Ill. 2d 39, 660 N.E.2d 895 (1995). Because the claim did not exist at the time the order of liquidation was entered, since the death occurred more than 18 months after the order had been entered, the death benefits claim did not constitute a "covered claim."

The order of liquidation was entered on March 9, 1989. Therefore, the Fund contends that the last possible date for filing a claim that the Fund would be required to cover was September 9, 1990. Because the loss giving rise to the death benefits had not yet transpired, the Fund claims that Barbee could not have then filed her claim.

Barbee argues that while the death occurred in 2007, the "occurrence giving rise to the unpaid claim" (215 ILCS 5/534.3(a) (West 2006)) was her husband's accidental injury rather than his subsequent death. And because the disability claim was already on the books of the insolvent insurance carrier at the time the Fund interceded, it was already apprised of a potential claim in the event her husband died of those injuries, thereby meeting the notice requirement of section 540.5 of the Illinois Insurance Code (215 ILCS 5/540.5 (West 2006)).

An employee injured on the job is entitled to disability benefits by way of the Workers' Compensation Act. 820 ILCS 305/8 (West 2006). The event that gives rise to a workers' compensation claim is the injury to the employee. 820 ILCS 305/8 (West 2006). If the employee subsequently dies as the result of his employment-related injuries, a widow or dependent of the injured worker is entitled to recover death benefits pursuant to section 7(a) of the Workers' Compensation Act. 820 ILCS 305/7(a) (West 2006). The statutory language, therefore, contemplates two distinct claims—one filed by the injured employee and the other filed by the dependent of the deceased employee.

We also find guidance supporting the theory that a worker's claim is separate and distinct from a survivor's claim in several workers' compensation cases. In *A.O. Smith Corp. v. Industrial Comm'n*, 109 Ill. 2d 52, 53, 485 N.E.2d 335, 336 (1985), the employee suffered injuries in 1971 rendering him comatose. The employee died of those injuries—nine years after the accident. *A.O. Smith Corp.*, 109 Ill. 2d at 53, 485 N.E.2d at 336. At issue was whether the survivors' benefits were to be calculated based upon the year of the injury or based upon the year of the death. *A.O. Smith Corp.*, 109 Ill. 2d at 55, 485 N.E.2d at 336-37. The court recognized the distinction "between a cause of action created in favor of the employee for injuries suffered but not resulting in death[ ] and a cause of action created in favor of his dependents for his injuries resulting in death." *A.O. Smith Corp.*, 109 Ill. 2d at 56, 485 N.E.2d at 337, citing *American Steel Foundries v. Industrial Comm'n*, 361 Ill. 582, 589, 198 N.E. 687, 690 (1935),

*superseded by statute on other grounds as stated in Segers v. Industrial Comm'n*, 191 Ill. 2d 421, 432, 732 N.E.2d 488, 495 (2000). The claim for an employee's injuries is personal to the employee, while the claim by his dependents is personal to the dependents "and does not come into existence until his death from such injuries." *A.O. Smith Corp.*, 109 Ill. 2d at 56, 485 N.E.2d at 337, citing *American Steel Foundries*, 361 Ill. at 589, 198 N.E. at 690; see also *General American Life Insurance Co. v. Industrial Comm'n*, 97 Ill. 2d 359, 365, 454 N.E.2d 643, 646 (1983) (holding that a health insurer could not seek reimbursement from a survivor out of death benefits because the death benefits claim was independent, "separate and apart from an employee's claim during his lifetime against his employer"); *Freeman United Coal Mining Co. v. Workers' Compensation Comm'n*, 386 Ill. App. 3d 779, 787, 901 N.E.2d 906, 914 (2008) (commenting upon the separation between claims for an employee's injuries and resulting disability and claims for benefits related to the same employee's death).

We next turn to the cases cited by the parties in support of and against the proposition that the death benefits claim could not be covered by the Fund.

Barbee cites to only one case—*A.O. Smith Corp.*, 109 Ill. 2d 52, 485 N.E.2d 335—in support of her argument that her claim meets the definition of a "covered claim" under sections 534.3 and 540.5 of the Illinois Insurance Code (215 ILCS 5/534.3, 540.5 (West 2006)). The crux of Barbee's argument is that "the occurrence giving rise to the unpaid claim" was the injury qualifying the decedent for workers' compensation benefits and not the death itself. Therefore, she reasons that because the Fund had knowledge of the original injury claim, the Fund *ipso facto* had knowledge of any potential claim. We believe, however, that *A.O. Smith Corp. v. Industrial Comm'n* (which is *not* an Illinois Insurance Guaranty Fund case) simply *does not* stand for this proposition. On the contrary, in deciding that workers' compensation survivor's benefits should be calculated at the statutory rate in effect on the date of death rather than on the date of the injury ultimately resulting in death, the supreme court concluded that the survivor benefit claim was a separate and independent claim from that of the injured employee even though the death was caused by the work-related injury. As earlier stated, the court emphasized that the survivor's claim did not even exist until the date of the employee's death. *A.O. Smith Corp.*, 109 Ill. 2d at 56, 485 N.E.2d at 337, citing *American Steel Foundries*, 361 Ill. at 589, 198 N.E. at 690. While Barbee shies away from using the term "contingent claim" in her argument, preferring instead the term "potential claim," we find no discernable difference since the decedent might well have never died of his original work-related injuries.

The Fund cites to *In re Ancillary Receivership of Ideal Mutual Insurance Co.*, 218 Ill. App. 3d 1039, 578 N.E.2d 1235 (1991), in support of its position that merely being contingent to the original disability claim does not mean that Barbee's claim is a "covered claim." While the specific facts of *In re Ancillary Receivership of Ideal Mutual Insurance Co.* are distinguishable from the facts of this case, we still find the court's analysis in that case to be helpful. The coverage at issue in *In re Ancillary Receivership of Ideal Mutual Insurance Co.* was a comprehensive general liability insurance. *In re Ancillary Receivership of Ideal Mutual Insurance Co.*, 218 Ill. App. 3d at 1042, 578 N.E.2d at 1236. The policy was in effect from August 1, 1984, to August 1, 1985. *In re Ancillary Receivership of Ideal Mutual Insurance Co.*, 218 Ill. App. 3d at 1042, 578 N.E.2d at 1236. The liquidation order was entered on February 7, 1985. *In re Ancillary Receivership of Ideal Mutual Insurance Co.*, 218 Ill. App. 3d at 1042, 578 N.E.2d at 1236. New York law provided a claims-filing deadline of February 7, 1986. *In re Ancillary Receivership of Ideal Mutual Insurance Co.*, 218 Ill. App. 3d at 1042, 578 N.E.2d at 1236. Claims filed after that date would share in what remained of the liquidated assets. *In re Ancillary Receivership of Ideal Mutual Insurance Co.*, 218 Ill. App. 3d at 1042, 578 N.E.2d at 1236. The insured returned its paperwork to the liquidator, requesting a return of the unused premium paid. *In re Ancillary Receivership of Ideal Mutual Insurance Co.*, 218 Ill. App. 3d at 1042, 578 N.E.2d at 1236. Many months after the claims deadline had passed, the insured was sued for liability pursuant to the Structural Work Act. *In re Ancillary Receivership of Ideal Mutual Insurance Co.*, 218 Ill. App. 3d at 1042, 578 N.E.2d at 1236. Two more suits were filed, for a total of three Structural Work Act-related suits. *In re Ancillary Receivership of Ideal Mutual Insurance Co.*, 218 Ill. App. 3d at 1042, 578 N.E.2d at 1236. The insured thereafter sought leave from the New York Insurance Department to amend its proof of claim to include coverage for the defense and indemnity of these three personal injury claims. *In re Ancillary Receivership of Ideal Mutual Insurance Co.*, 218 Ill. App. 3d at 1043, 578 N.E.2d at 1237. The New York Insurance Department allowed this amendment. *In re Ancillary Receivership of Ideal Mutual Insurance Co.*, 218 Ill. App. 3d at 1043, 578 N.E.2d at 1237. However, the Fund denied liability for these claims. *In re Ancillary Receivership of Ideal Mutual Insurance Co.*, 218 Ill. App. 3d at 1043-44, 578 N.E.2d at 1237.

Midwest Steel Erection Company (Midwest), the insured in *In re Ancillary Receivership of Ideal Mutual Insurance Co.*, claimed that in denying the claim, the Fund was thwarting the purpose of article XXXIV of the Illinois Insurance Code, which is to place the insured in

the same position the insured would have occupied but for the insolvency of the carrier. *In re Ancillary Receivership of Ideal Mutual Insurance Co.*, 218 Ill. App. 3d at 1044, 578 N.E.2d at 1237. Midwest also argued that the statutory definition of "covered claims" did not expressly exclude contingent claims, that the liquidation provisions of the Illinois Insurance Code must be read together with the sections of article XXXIV, and that the liquidation provisions of the Illinois Insurance Code expressly allow insureds of an insolvent insurance carrier to file contingent claims. *In re Ancillary Receivership of Ideal Mutual Insurance Co.*, 218 Ill. App. 3d at 1044, 578 N.E.2d at 1237.

The court reasoned that none of the three claims for Structural Work Act claims defense coverage were "covered claims" as defined by article XXXIV because no specific "proof of claim" had been provided to the Fund by the deadline. The court explained that the Illinois Insurance Code defined a proof of claim as " 'a statement under oath, in writing, signed by the claimant, setting forth the claim, the consideration therefor, and whether any, and if so, what securities are held therefor, and whether any, and if so, what payments have been made thereon, and that the sum claimed is justly owing from the company to the claimant.' " *In re Ancillary Receivership of Ideal Mutual Insurance Co.*, 218 Ill. App. 3d at 1046, 578 N.E.2d at 1239, quoting Ill. Rev. Stat. 1985, ch. 73, par. 821(1). The court found that Midwest's original proof of claim failed to identify the three particular claims and thus could not satisfy the written-proof-of-claim requirement. *In re Ancillary Receivership of Ideal Mutual Insurance Co.*, 218 Ill. App. 3d at 1046, 578 N.E.2d at 1239. Because the last possible date for filing the claims with the Fund was February 7, 1986, and the three lawsuits were not filed against Midwest until after that date, no attempt at a proof of claim would suffice.

With respect to the contingent-claim argument, Midwest cited to a bankruptcy case that defined a contingent claim as follows: "[A] contingent claim [is] one that 'remains uncertain, at the time of the filing of the petition in bankruptcy, whether or not the bankrupt will ever become liable to pay it. If it is certain that he is liable to pay it, although it may be uncertain how much he will have to pay, the claim is unliquidated, but it is not contingent.' " *In re Ancillary Receivership of Ideal Mutual Insurance Co.*, 218 Ill. App. 3d at 1046-47, 578 N.E.2d at 1239, quoting *In re Munsie*, 32 F.2d 304, 305 (D. Conn. 1929), *rev'd on other grounds*, 33 F.2d 79 (2d Cir. 1929). The court also looked to New York law for further understanding about the difference between an unliquidated claim and a contingent claim. Under New York law, a contingent claim is a claim that does not have a basis in fact at the moment when jurisdiction is assumed over the Fund,

while an unliquidated claim is one where the events have transpired and all that remains to be determined is damages. *In re Ancillary Receivership of Ideal Mutual Insurance Co.*, 218 Ill. App. 3d at 1047, 578 N.E.2d at 1239, citing *In re Empire State Surety Co.*, 165 A.D. 135, 139, 150 N.Y.S. 567, 569 (1914), *aff'd*, 214 N.Y. 553, 108 N.E. 825 (1915).

Based upon these definitions, the court concluded that the three Structural Work Act cases pending against the insured, Midwest, for which they sought defense funding, were, in fact, contingent claims. *In re Ancillary Receivership of Ideal Mutual Insurance Co.*, 218 Ill. App. 3d at 1047, 578 N.E.2d at 1239. The court found no liability because the three cases had not gone to judgment. The court stated that Midwest was mistaken about the application of the contingent-claim section of the Illinois Insurance Code in that even that section would not allow amendments to these claims since the three lawsuits had not been liquidated within the three years past the filing deadline. Ill. Rev. Stat. 1985, ch. 73, par. 821(3) (now see 215 ILCS 5/209(4)(a) (West 2006)). The court explained that the Fund allowed contingent claims if the contingent claims at issue were considered as "covered claims," which necessarily means timely filed claims. *In re Ancillary Receivership of Ideal Mutual Insurance Co.*, 218 Ill. App. 3d at 1048, 578 N.E.2d at 1240.

Additionally, the court considered another section of the Illinois Insurance Code, which contained a provision for late-filed claims—whether or not those claims are considered contingent. At that time, section 208(2) of the Illinois Insurance Code stated as follows:

" 'Proofs of claim on good cause shown may be filed subsequent to the date specified, but[ ] no such claim shall share in the distribution of assets until all allowed claims[,] proofs of which have been filed before said date, have been paid in full.' " *In re Ancillary Receivership of Ideal Mutual Insurance Co.*, 218 Ill. App. 3d at 1048, 578 N.E.2d at 1240, quoting Ill. Rev. Stat. 1985, ch. 73, par. 820(2) (now see 215 ILCS 5/208(2) (West 2006)).

The Fund in *In re Ancillary Receivership of Ideal Mutual Insurance Co.* relied upon a case from Michigan, *Satellite Bowl, Inc. v. Michigan Property & Casualty Guaranty Ass'n*, 165 Mich. App. 768, 419 N.W.2d 460 (1988). In *Satellite Bowl, Inc.*, the Michigan Court of Appeals denied a late-filed claim. *Satellite Bowl, Inc.*, 165 Mich. App. at 770, 419 N.W.2d at 461. An Ohio insurance company became insolvent. *Satellite Bowl, Inc.*, 165 Mich. App. at 770, 419 N.W.2d at 461. At the time of the insolvency, two claims existed against the Michigan insured, but the cases had yet to be filed against the insured. *Satellite Bowl, Inc.*, 165 Mich. App. at 770, 419 N.W.2d at 461. When

the insured notified the Michigan guaranty fund of the two suits, the guaranty fund denied responsibility for the claims because there had been no specific notification of the two claims. *Satellite Bowl, Inc.*, 165 Mich. App. at 770, 419 N.W.2d at 461. The causes of action accrued during the policy period that the insured had with the Ohio insurer. *Satellite Bowl, Inc.*, 165 Mich. App. at 770, 419 N.W.2d at 461. Because the Michigan insured did not know that a claim would be later filed, the insured could not know to put the Michigan guaranty fund on notice of the claims. *Satellite Bowl, Inc.*, 165 Mich. App. at 770-71, 419 N.W.2d at 461. The *In re Ancillary Receivership of Ideal Mutual Insurance Co.* court found that the Michigan statute regarding notice of a claim was the same as the Illinois statute. *In re Ancillary Receivership of Ideal Mutual Insurance Co.*, 218 Ill. App. 3d at 1052, 578 N.E.2d at 1242, citing *Satellite Bowl, Inc.*, 165 Mich. App. at 772, 419 N.W.2d at 462. The Michigan court analyzed the statutory language as allowing only claims that were timely filed. *Satellite Bowl, Inc.*, 165 Mich. App. at 771-72, 419 N.W.2d at 462. The purpose of the Michigan law was the protection of the policyholders—to eliminate the risk of conducting business with what would turn out to be an insolvent insurer. *Satellite Bowl, Inc.*, 165 Mich. App. at 771, 419 N.W.2d at 462. The fact that the legislature included a deadline requirement indicated to the Michigan court that the guaranty fund was not meant to cover every claim. *Satellite Bowl, Inc.*, 165 Mich. App. at 772, 419 N.W.2d at 462. The *In re Ancillary Receivership of Ideal Mutual Insurance Co.* court found that Michigan law, like Illinois law, simply did not allow for an expansion of the notification deadline for what could be labeled as equitable claims. *In re Ancillary Receivership of Ideal Mutual Insurance Co.*, 218 Ill. App. 3d at 1052, 578 N.E.2d at 1242, citing *Satellite Bowl, Inc.*, 165 Mich. App. at 772, 419 N.W.2d at 462. The *Satellite Bowl, Inc.* court concluded that the courts lack the power to carve out an exception to the statutorily required claims-filing deadline. *Satellite Bowl, Inc.*, 165 Mich. App. at 773, 419 N.W.2d at 462.

The insured, Midwest, next argued to the *In re Ancillary Receivership of Ideal Mutual Insurance Co.* court that its amendment to the proof of claim should relate back to the original filing date. In finding that this argument was flawed, the court distinguished the cases cited by Midwest which had allowed amendments to claims already on file—not a relation back of a separate claim. *In re Ancillary Receivership of Ideal Mutual Insurance Co.*, 218 Ill. App. 3d at 1053, 578 N.E.2d at 1243 (citing *In re Ebeling*, 123 F.2d 520, 521 (7th Cir. 1941) (where both the original and amended claims involved the same court foreclosure case), and *Continental Motors Corp. v. Morris*, 169 F.2d 315, 317 (10th Cir. 1948) (allowed an amendment of a breach of

contract claim to allege additional damages stemming from the breach of contract)). The court concluded that Midwest's case was different because the original claim made no mention of the three lawsuits. *In re Ancillary Receivership of Ideal Mutual Insurance Co.*, 218 Ill. App. 3d at 1053, 578 N.E.2d at 1243. The court indicated that it can only interpret existing law and cannot create law allowing a late filing. *In re Ancillary Receivership of Ideal Mutual Insurance Co.*, 218 Ill. App. 3d at 1053, 578 N.E.2d at 1243.

Another case analyzed and relied upon by the court in the *In re Ancillary Receivership of Ideal Mutual Insurance Co.* case was decided by our district. We turn to that case now. In *Union Gesellschaft Fur Metal Industrie Co. v. Illinois Insurance Guaranty Fund*, 190 Ill. App. 3d 696, 546 N.E.2d 1076 (1989), Union Gesellschaft Fur Metal Industrie Company (Union Gesellschaft) was the manufacturer of bicycle pedals and was insured under a products liability policy issued by a New York insurer. The insurer became insolvent, and our state's Fund became involved with the claims resulting from policies written by that insurer. The original claim filed by Union Gesellschaft before the filing deadline sought coverage for every claim known as of that date as well as for " 'each and every claim or suit after the [filing] date hereof, contingent or real, wherein a person was allegedly injured due to a defective product manufactured by [the insured].' " *Union Gesellschaft Fur Metal Industrie Co.*, 190 Ill. App. 3d at 698, 546 N.E.2d at 1077. After the expiration of the filing period, Union Gesellschaft received notice that two lawsuits were being filed against it, and both were within the policy period of the defunct insurer. Union Gesellschaft filed a declaratory judgment action seeking to have the court declare that the Fund was required to provide coverage for these two suits and for any and all other claims that might be later-filed. The court entered a summary judgment in this case on behalf of the Fund. In keeping with the legal rule that the statutory language should primarily dictate the legislature's intent, we concluded that "the statutory filing deadline would have no meaning" if a contingent claim filed after the deadline was deemed sufficient. *Union Gesellschaft Fur Metal Industrie Co.*, 190 Ill. App. 3d at 699-700, 546 N.E.2d at 1078-79, citing *Franzese v. Trinko*, 66 Ill. 2d 136, 139, 361 N.E.2d 585, 587 (1977). If the deadline did not mean to exclude nonfiled contingent claims, then the liquidation and distribution of the remaining insurer assets would not be able to occur until after all the possible statutes of limitation had expired. *Union Gesellschaft Fur Metal Industrie Co.*, 190 Ill. App. 3d at 700, 546 N.E.2d at 1079. We acknowledged the difficulty that such a deadline places upon an insured. Specifically, there was no way that Union Gesellschaft could have filed any specific detail about

these two lawsuits by the filing deadline imposed in that case, even though both causes of action had arisen during the period of insurance coverage. *Union Gesellschaft Fur Metal Industrie Co.*, 190 Ill. App. 3d at 700, 546 N.E.2d at 1079. Despite the issue of fairness, we stated, "Union's plight is not to be remedied by this court." *Union Gesellschaft Fur Metal Industrie Co.*, 190 Ill. App. 3d at 700, 546 N.E.2d at 1079. Courts lack the power to legislate and must give full effect to the intent of the legislative body that drafted the statutory language of article XXXIV. *Union Gesellschaft Fur Metal Industrie Co.*, 190 Ill. App. 3d at 700, 546 N.E.2d at 1079. Because Union Gesellschaft had not filed its specific claims before the deadline passed, we concluded that the two claims were not "covered claims" as contemplated by our legislature at the time it created the Fund. *Union Gesellschaft Fur Metal Industrie Co.*, 190 Ill. App. 3d at 700, 546 N.E.2d at 1079.

We also find section 209 of the Illinois Insurance Code (215 ILCS 5/209 (West 2006)) to be helpful in this analysis. Section 209 sets forth what is required for proper notice in the case of a contingent claim. The statute states as follows:

> "When a Liquidation, Rehabilitation, or Conservation Order has been entered in a proceeding against an insurer under this Code, any insured under an insurance policy shall have the right to file a contingent claim. The Court at the time of the entry of the Order of Liquidation, Rehabilitation[,] or Conservation shall fix the final date for the liquidation of insureds' contingent claims, but in no event shall said date be more than 3 years after the last day fixed for the filing of claims ***." 215 ILCS 5/209(4)(a) (West 2006).

This statute establishes that the legislature did not contemplate that a relation back or other type of attachment to the primary claim would be adequate notice.

We conclude that the disability benefits claim and the survivor's death benefits claim are separate from each other. As a result of the distinct nature of the claims—the different events validating the claims—the insurer could not be placed on notice of the death benefits claim until the employee passed away, which in this case was long after the 18-month period of time, as well as more than three years after any contingent claims had to be filed. The factual situation presented in this case could not have allowed a timely filed claim, given the date of liquidation and the date of death.

### Claims That Appear on Books and Records of Insolvent Company on Liquidation Date

Barbee's corollary argument that her claim appeared on the books of the insolvent insurance company at the time when the Fund stepped in is also not well-taken, because it must presume that the disability

claim that appeared on the books is equivalent to Barbee's having filed a contingent death claim. See 215 ILCS 5/540.5 (West 2006). As previously set forth, the law in Illinois clearly does not support this premise. *A.O. Smith Corp.*, 109 Ill. 2d at 56, 485 N.E.2d at 337; *In re Ancillary Receivership of Ideal Mutual Insurance Co.*, 218 Ill. App. 3d at 1048, 578 N.E.2d at 1240. Even if, theoretically, Barbee filed a contingent claim giving notice of a potential causally connected death "prior to the earlier of the last date fixed for the timely filing of proofs of claim in the domiciliary liquidation proceedings or 18 months after the entry of the order of liquidation" (215 ILCS 5/540.5(a) (West 2006)), it would have been to no avail because, as previously discussed, the three-year liquidation requirement under section 209(4)(a) of the Illinois Insurance Code (215 ILCS 5/209(4)(a) (West 2006)) could not have been met. "The Court at the time of the entry of the Order of Liquidation, Rehabilitation[,] or Conservation shall fix the final date for the liquidation of insureds' contingent claims, but in no event shall said date be more than 3 years after the last day fixed for the filing of claims, provided, such date may be extended by the Court on petition of the Director should the Director determine that such extension will not delay distribution of assets under Section 210. Such a contingent claim shall be allowed if such claim is liquidated and the insured claimant presents evidence of payment of such claim to the Director on or before the last day fixed by the Court." 215 ILCS 5/209(4)(a) (West 2006); *In re Ancillary Receivership of Ideal Mutual Insurance Co.*, 218 Ill. App. 3d at 1048, 578 N.E.2d at 1240.

## CONCLUSION

The court is not in a position to modify the statutory framework our legislators created when the Illinois Insurance Guaranty Fund was created. Claims submitted to the Fund must be in compliance with that statutory scheme. Once the insolvency of an insurer is declared, claims must be filed within the following 18 months. 215 ILCS 5/540.5(a) (West 2006). New claims filed after that time frame will not be considered as covered claims. Even if deemed a contingent claim—connected to the disability benefits claim—the Illinois Insurance Code cuts off any possibility of those claims after three years following the entry of the order of liquidation.

In workers' compensation law, the employee has his own claim, which is separate and distinct from any claim later filed by that employee's dependents after the employee's death. Because the death benefits claim is independent from the original claim for disability benefits, the fact that the two claims are connected via an original work-related accident with injuries is not relevant. The death benefits

claim does not exist while the employee is alive. And if the employee's death occurs outside of the 18-month filing deadline, although harsh, there is nothing that the court system can do to remedy that problem.

Although the purpose of the Fund is to keep the status quo, the Fund was never meant to cover every possible claim. The Fund steps into the position occupied by the defunct insurer only on "covered claims." 215 ILCS 5/532, 537.4 (West 2006). In this case, no claim existed for death benefits until after the deadline, nor could there be a survivor's death benefit claim on the books and records of the insurer when the insurer became insolvent. Therefore, the claim did not qualify as a "covered" claim.

For the foregoing reasons, the judgment of the circuit court of Clay County is hereby affirmed.

Affirmed.

WEXSTTEN, P.J., and STEWART, J., concur.